# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

CHRISTOPHER SNIDER, on behalf of the )
Seventy Seven Energy Inc. Retirement & )
Savings Plan and a class of similarly )
situated participants of the Plan, )
                                     Plaintiff, )
)
v.                                                  )   Case No. CIV-20-977-D
)
ADMINISTRATIVE COMMITTEE, )
SEVENTY SEVEN ENERGY, INC. )
RETIREMENT & SAVINGS PLAN; *et al.*, )
)
                                     Defendants. )

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Class Action Complaint [Doc. No. 24] under Fed. R. Civ. P. 12(b)(6). Defendants assert that Plaintiff Christopher Snider's claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, fail for the same reasons previously found in a related case, *Myers v. Administrative Committee*, Case No. CIV-17-200-D (W.D. Okla. Feb. 24, 2017), and for additional reasons, including untimeliness.[1] Plaintiff has opposed the Motion, which is fully briefed and ripe for decision. *See* Pl.'s Opp'n [Doc. No. 26]; Defs.' Reply [Doc. No. 27].

---

[1] The Court utilizes the style of the case in *Myers* after an amendment to correctly identify the defendants. *See id.*, Am. Compl. (Apr. 19, 2017). There are several differences between *Myers* and this case, most notably that Plaintiff has not sued the directed trustee, Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company.

**Factual and Procedural Background**

Plaintiff brings this ERISA action as a participant in the Seventy Seven Energy Inc. Retirement & Savings Plan (the "Plan") to obtain relief on behalf of the Plan and other participants for alleged breaches of fiduciary duties. Defendants are administrators and fiduciaries of the Plan, which was a "defined contribution plan" under 29 U.S.C. § 1002(34) sponsored by Seventy Seven Energy Inc. ("SSE") for its employees. Plaintiff filed this action on September 28, 2020, after he was identified during class-related discovery in *Myers* as a potential class member. His complaint is identical to an amended complaint that had been proffered earlier in *Myers* but was not allowed because the Court found that it was unnecessary and futile. Plaintiff moved to consolidate the two cases, but his motion was denied. *See* 12/22/20 Order [Doc. No. 25].

Briefly stated, SSE was formed in a spinoff from Chesapeake Energy Corporation ("Chesapeake") on June 30, 2014. The Plan was established on July 1, 2014, as a spinoff of Chesapeake's retirement plan. It was initially funded by a transfer of assets from Chesapeake's plan that were allocated to the accounts of individuals who became SSE employees and included a substantial amount of Chesapeake common stock. The Plan retained and increased its investment in Chesapeake stock from July 1, 2014, until December 31, 2017, when the Plan merged into another retirement plan with different fiduciaries.[2]

---

[2] The Plan merged into the Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan effective December 31, 2017, after SSE merged with Patterson-UTI Energy, Inc. following a Chapter 11 bankruptcy reorganization.

The Plan, like the Chesapeake plan before it, contained two components: a deferred compensation plan (or 401(k) plan) consisting of elective contributions by participants to be invested in funds other than SSE stock; and an employee stock ownership plan (ESOP) consisting of matching or discretionary contributions by SSE in the form of SSE common stock.[3] The Chesapeake plan similarly contained an ESOP of Chesapeake stock that, after the spinoff and transfer to the SSE Plan, was no longer a "qualifying employer security" for Plan participants because they were not employees of Chesapeake.[4] Under the Plan, the Chesapeake stock fund was frozen to new investment by Plan participants, but they could elect whether to keep it in their individual accounts. Plaintiff alleges that the Chesapeake stock was an imprudent investment for the Plan because the stock was volatile, risky, and steadily declining in value, because Chesapeake shared the same business sector and maintained close ties with SSE, and because a single-stock fund is not a prudent investment for a 401(k) plan, particularly given the large percentage of the Plan's holdings invested in Chesapeake stock.

By his Complaint, Plaintiff claims that Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a) in three ways: 1) by "wrongfully allowing the Plan to continue to invest in Chesapeake stock" in violation of the duty of prudence because Defendants

---

[3] A copy of the summary plan description and the Plan document appear in the record, respectively, as Exhibit 5 [Doc. No. 24-5] and Exhibit 6 [Doc. No. 24-6] to Defendants' Motion. The Plan says it "is a restatement due to a spin-off from the Chesapeake Plan." *See* Plan Doc. at 1.

[4] ERISA contains an employer stock rule that exempts qualifying employer securities from a fiduciary's statutory duties of diversification and prudence to the extent it requires diversification. *See* 29 U.S.C. § 1104(a)(2).

"erroneously believed it was a 'qualifying employer security' for Plan participants" and ignored "plain information that including Chesapeake stock [as a Plan investment] was not a prudent choice" (Compl. ¶ 114); 2) by "failing to liquidate the Chesapeake stock . . . and map it to other, diversified Plan options" in violation of the duty to diversify the Plan's assets (*id*. ¶ 120); and 3) by "fail[ing] to conduct an appropriate investigation of the merits of continued investment in Chesapeake" in violation of the duty to monitor and determine prudent investments recognized in *Tibble v. Edison International*, 575 U.S. 523, 530-31 (2015). *See* Compl. ¶¶ 125, 128.[5]  Plaintiff alleges that the Plan suffered substantial losses "because Plan assets were imprudently invested in the stock of one company, Chesapeake, in breach of Defendants' fiduciary duties" and because "[t]he Plan should have divested itself of Chesapeake stock immediately following the spin-off and avoided any purchase of Chesapeake stock throughout the Class Period" ending December 31, 2017. *Id*. ¶ 142.

Defendants assert:  1) the Court should reach the same decision as in *Myers* and dismiss Plaintiff's claim for breach of the duty of prudent investment under *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), because Chesapeake common stock was publicly traded and Plaintiff's factual allegations are based on public information; 2) the Court should revisit its decision in *Myers* and find that Defendants cannot be held liable for a failure to diversify the Plan's holdings because participants had a range of investment

---

[5] Plaintiff also asserts a claim for co-fiduciary liability under 29 U.S.C. § 1105(a), alleging that Defendants each knew of and participated in other fiduciaries' breaches of duties to the Plan and made no effort to remedy those breaches. *Id*. ¶¶ 136-37. Defendants address this claim in a single sentence; they contend a co-fiduciary claim fails because it "is derivative of a viable claim for some other breach" and Plaintiff has stated no other claim. *See* Defs.' Mot. Dismiss at 25 (internal quotation omitted).  Thus, the Court need not address it separately.

4

options and they decided whether to retain Chesapeake stock in their individual accounts; 3) the Court should follow its decision in *Myers* not to permit a claim for breach of a duty to monitor investments because the procedural duty discussed in *Tibble* does not provide an independent claim for relief; and 4) the Court should dismiss all claims as time barred by the two-year limitations period provided by the Plan or the three-year statutory period provided by ERISA, § 1113(2) or, alternatively, should dismiss any parts of Plaintiff's claims that are based on conduct beyond the six-year period of § 1113(1). Because a time bar might dispose of all claims, the Court will address it first.

## Standard of Decision

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

Defendants' statute of limitations argument raises an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). Rule 12(b)(6) permits the dismissal of a claim that is barred by

an affirmative defense where the facts necessary to determine the defense appear on the face of the complaint. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *accord Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019). "A statute of limitations defense may be appropriately resolved on a [Rule] 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016); *see Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096-97 (10th Cir. 2009) ("if the allegations show that relief is barred by the applicable statutes of limitations, the complaint is subject to dismissal for failure to state a claim").

There are well-established exceptions to the general rule that "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Materials that can be considered under Rule 12(b)(6) include: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (internal quotations and citations omitted); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). Matters subject to judicial notice and appropriate for consideration under Rule 12(b)(6) include a court's "own files and records, as well as facts which are a matter of public record." *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

Here, the Complaint quotes from and cites Plan documents, published financial statements, and public records such as SEC filings. Defendants have submitted copies of

some documents as exhibits to their Motion, and Plaintiff does not dispute their authenticity. Thus, these materials can properly be considered. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997); *see also Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

## Discussion

The alleged facts of this case are familiar to the parties and the Court and were described in detail in prior orders in *Myers*. They are related in this Order only as necessary to address the parties' arguments. For convenience of the reader, pertinent orders in *Myers* include the March 22, 2019 order granting in part Defendants' Rule 12(b)(6) motion (available on Westlaw, 2019 WL 1320064) and the July 24, 2020 order denying a Rule 15(a)(2) motion to file a second amended complaint (available through Public Access to Court Electronic Records (PACER), https://pacer.uscourts.gov).

**A.    Are Plaintiff's Claims Time Barred?**

**1.    Limitations Period Provided by the Plan**

Defendants first assert that Plaintiff's action is barred by his failure to file suit within the two-year limitations period provided by the Plan. Although the parties debate whether ERISA permits the Plan to shorten the statutory period, the Court finds that the Plan's provision does not apply to this action in any event.

The Plan provides: "Should any Participant . . . pursue a legal action <u>against the Plan</u>, such legal action may not be brought more than two years following the date such cause of action or proceeding arose." *See* Seventy Seven Energy Inc. Ret. & Sav. Plan

7

[Doc. No. 24-6] § 10.10 (emphasis added).[6]  Plaintiff brings this action under unique remedial provisions of ERISA that authorize a plan participant to sue a fiduciary for breaching a statutory duty and to obtain relief for "losses to the plan resulting from each such breach." *See* 29 U.S.C. §§ 1109(a), 1132(a)(2).  Plaintiff's action is not against the Plan but, instead, is brought on behalf of the Plan against its fiduciaries.  By its terms, the two-year limitations provision of the Plan does not apply to this case.

### 2. Limitations Periods Provided by ERISA

Defendants alternatively assert that ERISA's three-year statute of limitations bars Plaintiff's action because his claims arise from conduct that occurred before September 28, 2017, and, alternatively, the six-year statute of limitations bars any claim based on conduct before September 28, 2014.  The parties disagree on which statutory provision applies under the factual allegations of the Complaint and related materials.

As pertinent here, ERISA contains two limitations periods for claims against fiduciaries:

> No action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation under [ERISA], or with respect to a violation of [ERISA], after the earlier of –
>
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>>
>> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

---

[6] As used in this provision, "'Plan' means the savings and incentive stock bonus plan of the Employer set forth in this document . . . ;" the term does not encompass its administrators or fiduciaries. *Id*. § 1.02.

29 U.S.C § 1113.  To obtain the benefit of the shorter three-year period, Defendants must show Plaintiff had "actual knowledge" of the alleged breach, that is, he was in fact aware of it or aware of the relevant information.  *See Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776-77 (2020).  Although the Supreme Court stated in *Sulyma* that actual knowledge could be proved through inferences from circumstantial evidence, the Court was clear that no level of constructive knowledge – as might arise from a mere disclosure of information – is sufficient.  The three-year period of "§ 1113(2) begins only when a plaintiff actually is aware of the relevant facts, not when he should be." *Id.* at 778.

Defendants argue that Plaintiff had actual knowledge of their alleged breaches – failing to divest the Plan of Chesapeake stock or diversify the Plan's investments – because Plaintiff knew the Plan continued to hold Chesapeake stock after the spinoff and knew his individual account had Chesapeake stock.  It is certainly true that Plaintiff makes categorical assertions that Defendants should have divested immediately and Chesapeake stock was never a prudent 401(k) investment. *See*, *e.g.*, Compl. ¶¶ 2, 47, 51-52, 61-62, 142.  Knowing there was Chesapeake stock allocated to his individual account and the Plan retained the Chesapeake stock may have provided Plaintiff with actual awareness of the relevant information for these specific claims.  However, Plaintiff also makes more nuanced allegations that Defendants breached their duties of prudence and diversification by retaining the Chesapeake stock throughout the proposed class period; he accuses Defendants of not evaluating the effects of a change in status from an ESOP to a single-stock fund in a 401(k) plan, not considering an alleged over-concentration of risk, and

never making a proper assessment of whether the stock was a prudent investment for the Plan. Although discovery may show otherwise, the Court cannot say on the existing record that Plaintiff had actual knowledge of all Defendants' alleged breaches by September 28, 2017, and that all claims are barred by § 1113(2).

ERISA's general six-year provision does not depend on Plaintiff's knowledge. Looking back six years from the date Plaintiff filed this action, only a claim that accrued during the first three months of the proposed class period – that is, between July 1, 2014, and September 28, 2014 – would be time barred. Again, although Plaintiff alleges that divestment of the Chesapeake stock should have been immediate, his claims are not based solely on that allegation; he contends Defendants should have evaluated the Chesapeake stock as an appropriate investment and divested the Plan of the stock at some unspecified point. *See*, *e.g.*, Comp. ¶ 41 (prudent fiduciaries would have "removed [the Chesapeake stock] from the Plan at the earliest possible date after the spin-off") (emphasis omitted), ¶ 52 (if Defendants had performed their duties, they "would have liquidated the Plan's holding in [Chesapeake stock] at the earliest possible date following the spin-off"). It is unclear that any breach, other than the lack of immediate divestment, occurred within the limited three-month period subject to a time bar. Thus, the Court finds that even a partial dismissal of Plaintiff's claims as barred by § 1113(1) cannot be made on the existing record.

For these reasons, the Court finds that Defendants have failed to establish Plaintiff's action should be dismissed at the pleading stage as time barred.

**B.       Has Plaintiff Stated a Claim for Breach of the Duty of Prudence?**

The Court found in *Myers* that neither the operative pleading nor a proposed amendment was sufficient to state a plausible claim for breach of Defendants' duty of prudence under the *Dudenhoeffer* standard applicable to pension plans involving publicly traded securities. Under this standard, because "a fiduciary usually is not imprudent to assume that a major stock market provides the best estimate of the value of the stocks traded on it," a plaintiff must "point[ ] to a special circumstance affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information that would make reliance on the market's valuation imprudent." *Dudenhoeffer*, 573 U.S. at 427 (internal quotations and citations omitted).

Here, as in *Myers*, Plaintiff asserts that this standard does not apply to an imprudent investment claim like the one asserted, which does not involve an ESOP or an over-valuation of stock as in *Dudenhoeffer* and instead alleges an unacceptable degree of risk. In *Myers*, the Court considered and rejected this argument in partially granting Defendant's motion to dismiss that case. *See Myers*, 2019 WL 1320064 at *9. Plaintiff also asserts that the *Dudenhoeffer* standard does not apply because his imprudent investment claim is based on a risk concentration associated with over-investing in a single-stock fund. The Court rejected this argument in *Myers* in ruling on a motion to amend the operative pleading to add this legal theory, ruling that the theory could be pursued under the rubric of an existing claim that Defendants breached a fiduciary duty to diversify the Plan's investments (discussed *infra*). *See Myers*, Case No. 17-200-D, 7/24/20 Order at 10-11.

11

In this case, Plaintiff urges the Court to revisit these rulings based on interim decisions of federal appellate courts. Two opinions present a potential basis to alter the Court's prior rulings: *Schweitzer v. Investment Committee of Phillips 66 Savings Plan*, 960 F.3d 190 (5th Cir. 2020); and *Stegemann v. Gannett Co.*, 970 F.3d 475 (4th Cir. 2020), *petition for cert. filed sub nom.*, *Gannett Co. v. Quatrone*, No. 20-609 (U.S. Oct. 30, 2020). Both cases involved similar circumstances, where a corporate spinoff caused employees of a new company to have a pension plan that was heavily invested in the stock of a former parent company (commonly known as legacy stock) and effectively converted a former ESOP to a single-stock fund of a 401(k) defined contribution plan. Also, the former parent and subsidiary companies continued to operate in the same business sector after the spinoff, which magnified the concentration risk of the legacy stock. The two appellate opinions have created a split of authority on some issues, and the Supreme Court is currently considering whether to resolve the uncertainty. However, the decisions provide guidance that was unavailable to the Court when it issued the original rulings.

The Fifth and Fourth Circuits were uniform in deciding that *Dudenhoeffer* forecloses a duty-of-prudence claim alleging that plan fiduciaries should not have relied on an efficient market to provide a fair valuation of the stock, but both held that *Dudenhoeffer* does not apply to a duty-of-prudence claim alleging that a single-stock fund is "imprudent because of the risk inherent in failing to diversify." *Schweitzer*, 960 F.3d at 197; *see Stegemann*, 970 F.3d at 474 ("We agree with the Fifth Circuit as to *Dudenhoeffer* . . ."). From this point, the opinions diverged. The Fifth Circuit held that the plaintiffs "plausibly alleged that the [legacy stock fund], by its resulting concentration of investment, became

12

an imprudent investment with the spinoff" but the duty-of-prudence claim failed because the fiduciaries met the obligations imposed by ERISA (such as warning against an undiversified portfolio) and properly allowed the plan participants to choose for themselves whether to divest their individual accounts. *See Schweitzer*, 960 F.3d at 198-99. The Fourth Circuit agreed that the plaintiffs' allegations that the legacy stock was an imprudent investment under the circumstances "were sufficient to state a claim for a breach of the duty of prudence." *See Stegemann*, 970 F.3d at 476. But the Fourth Circuit disagreed "as to the effect of participant choice on a fiduciary's duties with respect to a defined contribution plan." *Id*. at 474. Under its view, the duty of prudence includes duties of diversification and risk management that may require a fiduciary to divest a defined contribution plan of a legacy stock fund, even if the fund is frozen to new investment and participants are free to remove it from their individual accounts. *Id*. at 478-79.[7] The Fourth Circuit rejected the Fifth Circuit's reasoning, in part, as contrary to ERISA "because the claim that intervening participant choice should relieve a fiduciary of liability is an affirmative defense that courts do not consider at the motion to dismiss stage." *Id*. at 480.

Under the persuasive weight of this authority, the Court now departs from its prior decision to find that Plaintiff's Complaint states a plausible claim that Defendants breached their duty of prudence under § 1104(a)(1)(B). The Court further finds the Fourth Circuit's view of the effect of participant choice to be more persuasive. "The Fifth Circuit is generally correct that fiduciaries should not be liable for participant autonomy, but we

---

[7] A dissenting member of the panel disagreed with the majority's treatment of participant choice. *See Stegemann*, 970 F.3d at 486-87 (Niemeyer, J., dissenting).

disagree with the court on whether a defendant may invoke that autonomy in a motion to dismiss." *Stegemann*, 970 F.3d at 481.

In this Court's view, the Fifth Circuit's analysis resulted in a premature decision to absolve the fiduciaries from any liability for including an allegedly imprudent investment option in the defined contribution plan because the participants made informed decisions to retain the investment in their individual accounts. Its analysis treated an affirmative defense as appropriate for resolution at the pleading stage. Under Tenth Circuit law, however, Rule 12(b)(6) permits the dismissal of a claim as barred by an affirmative defense only when the complaint and properly considered materials admit "all the elements of the affirmative defense by alleging the factual basis of those elements." *See Fernandez*, 883 F.3d at 1299. Only "where there is no disputed issue of fact raised by an affirmative defense, or the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense[,] it is appropriate and expedient to dispose of a claim by a motion to dismiss under Rule 12(b)." *Frost v. ADT, LLC*, 947 F.3d 1261, 1267 (10th Cir. 2020). Here, Defendants have not shown that their arguments regarding participant choice are appropriate for resolution by their Motion.

For these reasons, the Court finds that Defendants are not entitled to a dismissal of Plaintiff's claim for breach of the duty of prudence.

### C.     Has Plaintiff Stated a Claim for Breach of the Duty to Diversify?

Plaintiff's claim that Defendants breached a duty to diversify investments under § 1104(a)(1)(C) rests on the fact that the transfer of assets from the Chesapeake plan to the

14

SSE Plan resulted in more than 40 percent of the Plan's total assets being invested in a single-stock fund. *See* Compl. ¶¶ 4, 39, 55, 86. "In fact, the Plan's investment in Chesapeake was greater than the combined total of [the] Plan's next five largest holdings at the end of 2014." *Id*. ¶ 90. Plaintiff claims that "the Plan's investment was over-concentrated in one company whose share price was historically volatile" and whose concentration risk was magnified by the Plan's ESOP. *Id*. ¶¶ 56, 61, 85 (emphasis omitted). Defendants allegedly exacerbated the problem "by allowing the Plan to acquire even more Chesapeake stock in 2014" and 2015. *Id*. ¶ 91-92.[8] Plaintiff asserts: "Given the Plan's excessive holding in Chesapeake stock, coupled with the Plan's concurrent investment in SSE stock and SSE's dependence on Chesapeake, a prudent fiduciary would have sold the Chesapeake stock to properly diversify the Plan's assets and avoid be[ing] concentrated in the assets of one company and dependent on the success of one enterprise." *Id*. ¶ 87 (internal quotations omitted).

The duty imposed by § 1104(a)(1)(C) requires a fiduciary to discharge his duties with respect to a plan "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." In this case, as in *Myers*, Plaintiff claims that Defendants breached the duty to diversify by electing to retain a substantial investment of the Plan's 401(k) assets in a legacy stock fund whose risk concentration was amplified by the ESOP component and by allowing the

---

[8] Defendants explain these acquisitions as dividend reinvestments and necessary transactions to restore the individual accounts of terminated employees after a partial termination of the Plan. *See* Defs.' Mot. at 17-18 & nn.18-19. It is not clear that this explanation is based solely on Rule 12(b)(6) materials.

Plan's holdings to increase even though the fund was frozen to new investment. The Court held in *Myers* these same allegations stated a plausible claim. *See Myers*, 2019 WL 1320064 at *8.[9]

Defendants urge the Court to revisit its decision in *Myers*, bolstering their prior argument that the duty to diversify looks at a plan's investments as a whole rather than a single investment based on *Schweitzer*. *See* Defs.' Mot. at 14-15.[10] The Fifth Circuit endorsed the view in *Schweitzer* that the fiduciaries of a defined contribution plan "need only provide investment options that enable participants to create diversified portfolios; they need not ensure that participants actually diversify their portfolios." *Schweitzer*, 960 F.3d at 196. The court found that the plaintiffs' "§ 1104(a)(1)(C) claim fail[ed]" because they had "not alleged that the Fiduciaries did not offer sufficient investment options or failed to warn Plan participants of the risk of a concentrated portfolio." *Schweitzer*, 960 F.3d at 196.

Again, the view adopted by the court in *Schweitzer* contrasts with the opinion in *Stegemann*, where the court addressed the duty to diversify as "a component of prudence" and as a separate claim. *Stegemann*, 970 F.3d at 477. Under the Fourth Circuit's analysis, the duty to diversify under § 1104(a)(1)(C) is implicated, at a minimum, by "the interplay between two single-stock funds" when a legacy stock fund and an ESOP "are in the same

---

[9] Defendants incorrectly seek to limit this holding to the Plan's acquisition of additional Chesapeake stock. *See* Defs.' Mot. at 19 & n.20. If the initial ruling was unclear, the Court's subsequent order denying further amendment of Ms. Myers' pleading as unnecessary removed any doubt that the holding was not so limited. *See Myers*, 7/24/20 Order at 10-11.

[10] They also cited decisions that pre-date the Court's ruling in *Myers*.

16

sector and tend to rise and fall together." *Id*. at 478. The court found that this "correlation theory plausibly states a claim for a breach of the duty of diversification." *Id*.[11]

The parties have not identified, and the Court is not aware of, any Tenth Circuit decision on this issue, and the Supreme Court is still considering whether to resolve a circuit split. Under these circumstances, where there remains no controlling authority to guide the decision in this case, the Court finds insufficient reason to depart from the path that it carefully considered and chose in *Myers*. Accordingly, the Court finds that the Complaint states a plausible claim that Defendants breached the duty of diversification.

### D. Has Plaintiff Stated a Claim for Failure to Monitor Investments?

Plaintiff also claims that Defendants breached a duty to monitor investments and remove an imprudent one (the Chesapeake stock), relying on a duty the Supreme Court endorsed in *Tibble v. Edison International*, 575 U.S. 523, 530-31 (2015). *See* Compl. ¶¶ 125, 128. Here, as in *Myers*, Plaintiff makes no effective response to Defendants' argument that the duty discussed in *Tibble* is a procedural one and a breach of this duty does not provide an independent claim. Plaintiff provides citations of authority from federal district court cases to support his position that such an ERISA claim exists. *See* Pl.'s Opp'n at 15-17. The Court is not persuaded by these decisions.

The Fifth Circuit held in *Schweitzer*, 960 F.3d at 199, that a breach of fiduciary duty claim fails where it "rest[s] solely on the fiduciaries' procedural lapses" without a resulting loss. The Fourth Circuit agreed in *Stegemann* that the duty to monitor discussed in *Tibble*

---

[11] The dissenting opinion also disagreed with the majority and sided with *Schweitzer* on this claim. *See id*. at 487 (Niemeyer, J., dissenting).

is included in the duty of prudence and "is an extension of the duty to investigate." *See Stegemann*, 970 F.3d at 474, 475.  A separate *Tibble* claim is not necessary or available.

Therefore, the Court finds that Plaintiff's Complaint fails to state a plausible claim based on a duty under *Tibble* to monitor the Plan's investments.

## Conclusion

For these reasons, the Court finds that the Complaint adequately states claims against Defendants for breaching fiduciary duties under 29 U.S.C. § 1104(a)(1)(B) and (C) to act with prudence and to diversify the Plan's investments but that the Complaint fails to state a separate claim that they breached a duty to monitor the Plan's investments.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Class Action Complaint [Doc. No. 24] is **GRANTED** in part and **DENIED** in part, as set forth herein.

**IT IS SO ORDERED** this 8th day of October, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge