# EXHIBIT A

**Execution Version**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER SNIDER, on behalf of the Seventy Seven Energy Inc. Retirement & Savings Plan and a class of similarly situated participants of the Plan, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-20-977-D |
| ADMINISTRATIVE COMMITTEE, SEVENTY SEVEN ENERGY INC. RETIREMENT & SAVINGS PLAN; et al. | ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION SETTLEMENT AGREEMENT

   This Class Action Settlement Agreement ("Settlement Agreement") is entered into by and among (i) Plaintiff Christopher Snider, individually and on behalf of the Plan and the proposed Settlement Class, on the one hand, and (ii) Defendants, on the other hand.

## RECITALS

   WHEREAS, on September 28, 2020, Plaintiff filed the above-captioned putative class action, *Christopher Snider v. Administrative Committee, Seventy Seven Energy Inc. Retirement & Savings Plan, et al.*, Case No. CIV-20-977-D, in the United States District Court for the Western District of Oklahoma (the "Action"), asserting various claims for relief under ERISA against Defendants, all as more fully set forth in the pleadings in the Action, which live pleadings are incorporated herein by reference for explanation of the claims asserted;

   WHEREAS, Defendants have contested Plaintiff's claims from the outset, including filing a motion to dismiss, which was fully briefed by the Parties;

   WHEREAS, the Court granted in part and denied in part Defendants' motion to dismiss by Order dated October 8, 2021;

   WHEREAS, Defendants deny and dispute any and all liability with respect to any and all claims and damages alleged in the Action, and maintain that, at all relevant times, they have acted reasonably, prudently, in good faith, and in compliance with all applicable laws and regulations;

WHEREAS, the Parties reached an agreement in principle for Settlement of this Action. This agreement was only reached after lengthy settlement negotiations and an all-day mediation, held on February 15, 2022, with Robert A. Meyer, who is experienced in mediating ERISA and other complex class actions;

WHEREAS, the Parties acknowledge that they are entering into this Settlement Agreement voluntarily and after consultation with counsel of their choosing;

WHEREAS, there is considerable doubt, uncertainty, confusion, controversy, and disagreement concerning the existence and extent of Defendants' liability, if any, to Plaintiff regarding the dispute and the matters at issue in the Action; and

WHEREAS, the Parties desire to promptly and fully resolve and settle with finality the Action on a class-wide basis without further litigation, and that the Parties do not wish or intend this Settlement Agreement to be an admission by any of them concerning any matter whatsoever.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described, and for good and valuable consideration, the receipt, adequacy, and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

## 1.     DEFINITIONS

As used in this Settlement Agreement, capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1     "Action" shall have the meaning set forth on page 1.

1.2     "Agreed Expenses" shall have the meaning set forth in Section 9.2.3 hereof.

1.3     "Agreement Execution Date" shall mean the date on which the final signature is affixed to this Settlement Agreement.

1.4     "Alternative Judgment" shall have the meaning set forth in Section 1.18 hereof.

1.5     "CAFA" shall mean the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

1.6     "CAFA Notice" shall mean notice of this proposed Settlement to the appropriate federal and state officials.

1.7    "Case Contribution Award" shall mean the monetary amount which may be awarded to Plaintiff by the Court in connection with Plaintiff's assistance in the prosecution of this Action.

1.8    "Chesapeake Stock" shall mean any shares of stock in Chesapeake Energy Corporation.

1.9    "Class Counsel" shall mean Bailey & Glasser LLP, Izard Kindall & Raabe LLP, and Latham, Wagner, Steele & Lehman.

1.10   "Class Exemption" means the Prohibited Transaction Exemption 2003-39, "Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75632-01, as amended.

1.11   "Class Notice" shall mean the notice which is to be mailed to members of the Settlement Class and posted on the Settlement Website substantially in the form of Exhibit A to the form of Preliminary Approval Order attached hereto as Exhibit 1.

1.12   "Class Period" shall mean the period from July 1, 2014 to February 28, 2021.

1.13   "Class Settlement Amount" shall mean the total sum of Fifteen Million Dollars and Zero Cents ($15,000,000) in United States currency.

1.14   "Company" shall mean, collectively, Seventy Seven Energy Inc., Seventy Seven Energy LLC, Patterson-UTI Energy, Inc, their Successors-in-Interest, and their respective subsidiaries and affiliates.

1.15   "Complaint" shall mean the Class Action Complaint filed in the Action on September 28, 2020.

1.16   "Court" shall mean the United States District Court for the Western District of Oklahoma.

1.17   "Defendants" shall mean, collectively, the Administrative Committee of the Seventy Seven Energy Inc. Retirement and Savings Plan, Cary Baetz, Karl Blanchard, Christin Borden, Linda Clark, Clint Cover, Gina DeMarco, Lance Haffner, and Jerome Loughridge.

1.18   "Effective Date" shall mean (i) the date on which the Final Order becomes Final or (ii) in the event that the Court enters an order and final judgment in a form other than that provided as Exhibit 2 ("Alternative Judgment") and none of the Parties elect to terminate this Settlement, the date such Alternative Judgment becomes Final.

1.19  "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.20  "Escrow Agent" shall be the same entity selected to serve as Settlement Administrator.

1.21  "Fairness Hearing" shall have the meaning set forth in Section 2.1.5 hereof.

1.22  "Final" shall mean, with respect to any judicial ruling or order approving this Settlement, that (i) the time has expired to file an appeal, motion for rehearing, or petition for writ of certiorari with respect to such judicial ruling or order with no timely appeal, motion for hearing, or petition for writ of certiorari having been made, as the case may be; or (ii) a timely appeal has been taken from the judicial ruling or order and the judicial ruling or order has been affirmed with no further right of appeal or rehearing because the time has expired or a petition for rehearing and/or a writ of certiorari has been denied; or (iii) if, following an appeal, a timely petition for rehearing and/or a writ of certiorari has been granted, the judicial ruling or order has been affirmed.

1.23  "Final Order" shall have the meaning set forth in Section 2.1.5 hereof and be substantially in the form attached hereto as Exhibit 2.

1.24  "Immediate Family Members" shall consist of spouses and children.

1.25  "Independent Fiduciary" means Fiduciary Counselors Inc., or if Fiduciary Counselors Inc. does not or ceases to serve, another Person mutually agreeable to the Parties to evaluate the fairness of the Settlement to the Plan and to issue the release set forth in Section 3.1 on behalf of the Plan.

1.26  "Patterson Plan" shall mean the Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan.

1.27  "Parties" shall mean Plaintiff and Defendants.

1.28  "Person" shall mean an individual, partnership, corporation, governmental entity, or any other form of entity or organization.

1.29  "Plaintiff" shall mean Christopher Snider, individually and on behalf of the Plan and the proposed Settlement Class.

1.30  "Plaintiff's Counsel" shall mean Class Counsel and MKLLC Law.

1.31    "Plan" shall mean, collectively, the Seventy Seven Energy Inc. Retirement & Savings Plan, the Seventy Seven Energy LLC Retirement & Savings Plan, the Patterson Plan, and their Successors-in-Interest.

1.32    "Plan of Allocation" shall mean the Plan of Allocation approved by the Court as contemplated by Article 2 hereof and described in Section 8.2.3 hereof. A proposed Plan of Allocation is attached hereto as Exhibit 3.

1.33    "Preliminary Approval Order" shall have the meaning set forth in Section 2.1.1 hereof and be in the form attached hereto as Exhibit 1.

1.34    "Protective Order" shall mean the Agreed Protective Order filed on January 19, 2022 in the Action, Docket No. 37.

1.35    "Released Claims" shall mean any and all past, present, and future claims, demands, rights, liabilities, causes of action, damages, costs, expenses, and compensation of every nature or description whatsoever, fixed or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated, now existing or that might arise hereafter, at law or in equity, matured or unmatured, whether class or individual in nature, asserted or that might or could have been asserted in any forum by Releasing Parties against any or all of the Released Parties that: (a) were brought or could have been brought in the Action and arise out of the same or substantially similar facts, circumstances, situations, transactions, or occurrences as those alleged in the Action; or (b) were brought or could have been brought under ERISA with respect to Chesapeake Stock in the Plan (including the Patterson Plan). The Parties intend this Release to be as broad and comprehensive as possible so as to give the Released Parties the broadest possible protection.

1.36    "Released Parties" shall mean each and all of Defendants, the Company, the Plan's (including the Patterson Plan's) trustees, fiduciaries, and committee members, and each of their respective past, present, and future directors, officers, fiduciaries, participants, beneficiaries, employees, employers, partners, principals, agents, members, managers, independent contractors, Representatives, underwriters, issuers, insurers, co-insurers, insureds, reinsurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, investment managers, fiduciaries, committee members, personal representatives, predecessors, service providers, Successor-in-Interest, parents, subsidiaries, divisions, affiliates, assigns, heirs, executors, administrators, associates, related or affiliated persons or entities, Immediate Family Members, all other persons and firms for whom they could be legally responsible, and anyone else who could be deemed a fiduciary of the Plan (including the Patterson Plan).

1.37   "Releases" shall mean the releases and covenants not to sue set forth in Articles 3 and 4 hereof.

1.38   "Releasing Parties" shall mean each and all of Plaintiff (in all capacities), the Settlement Class (including each and every member of the Settlement Class), the Plan (including the Patterson Plan), and their respective past, present, and future directors, officers, fiduciaries, participants, beneficiaries, employees, employers, partners, principals, agents, members, managers, independent contractors, Representatives, underwriters, issuers, insurers, co-insurers, insureds, reinsurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, investment managers, fiduciaries, committee members, personal representatives, predecessors, service providers, Successor-in-Interest, parents, subsidiaries, divisions, affiliates, assigns, heirs, executors, administrators, associates, related or affiliated entities, Immediate Family Members, and all other persons and firms for whom they could be legally responsible.

1.39   "Representatives" shall include, but are not limited to, attorneys, agents, directors, officers, or employees.

1.40   "Review Proceeding" means an appeal, motion for reargument, motion for rehearing, petition for a writ of certiorari to the Supreme Court of the United States, or other writ.

1.41   "Settlement" shall mean the settlement to be consummated under this Settlement Agreement.

1.42   "Settlement Administrator" means Kurtzman Carson Consultants LLC, or if Kurtzman Carson Consultants LLC does not or ceases to serve, another Person retained by Class Counsel, after consultation with Defendants, who shall not unreasonably withhold approval of Class Counsel's selection, to administer the Settlement. The Settlement Administrator shall administer the Settlement subject to the jurisdiction of the Court.

1.43   "Settlement Agreement" shall mean this Class Action Settlement Agreement.

1.44   "Settlement Class" shall mean all persons, except Defendants and their Immediate Family Members, who were or are participants in or beneficiaries of the Plan (including the Patterson Plan) at any time during the Class Period and whose accounts included any investment in Chesapeake Stock at any time during such period.

1.45   "Settlement Expenses" shall have the meaning set forth in Section 8.1 hereof.

1.46     "Settlement Fund" shall mean the Class Settlement Amount deposited with the Escrow Agent as set forth in Section 2.5 hereof and any interest earned thereon.

1.47     "Settlement Fund Account" shall have the meaning set forth in Section 7.1.1 hereof.

1.48     "Settlement Proceeds" shall mean the balance of the Settlement Fund after satisfaction of attorneys' fees, costs, and expenses pursuant to Section 10.1 hereof, Case Contribution Award pursuant to Section 10.2 hereof, and any other Settlement Expenses pursuant to Section 8.1 hereof.

1.49     "Settlement Website" means the website to be established or maintained by the Settlement Administrator where the Settlement Class members can obtain copies of the Class Notice, this Settlement Agreement, and the Plan of Allocation, as described in the Class Notice.

1.50     "Successor-in-Interest" shall mean a Person's estate, Representatives, heirs, successors, or assigns, including successors or assigns that result from corporate mergers or other structural changes.

## 2. CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT

The Parties shall have the following obligations, and the Settlement is contingent on the following conditions in Sections 2.1 through 2.6 hereof, unless waived in writing by the Parties.

2.1     <u>Condition 1: Court Approval.</u> The Parties will notify the Court of the execution of the Settlement Agreement and that Plaintiff shall file a motion for preliminary approval on or before April 29, 2022. The Parties' rights and obligations under the Settlement are contingent upon and subject to entry of the Final Order by the Court and the Final Order becoming Final. The Parties shall seek from the Court (i) preliminary approval of the terms of the Settlement, including the proposed Plan of Allocation and the Class Notice of the Settlement, (ii) preliminary certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(1), and (iii) the scheduling of a hearing date for final approval of the Settlement (including the Plan of Allocation) as fair, reasonable, and adequate, with appropriate time allowed for objection(s) from the Settlement Class.

2.1.1     <u>Motion for Preliminary Approval of Settlement, Class Certification, and Notice.</u> Plaintiff shall seek an order preliminarily approving the Settlement, as attached as Exhibit 1 to this Settlement Agreement, and the Parties shall, in good faith, take reasonable steps to (i) secure

expeditious Court entry of the Preliminary Approval Order and (ii) seek the scheduling of the Fairness Hearing, described in Section 2.1.5 hereof, no sooner than ninety (90) calendar days after the mailing of the Class Notice in accordance with Section 2.1.4 hereof. The Parties agree that Plaintiff's motion for preliminary approval shall be filed on or before April 29, 2022.

2.1.2 <u>CAFA Notice.</u> Within ten (10) calendar days after the filing of the motion for preliminary approval, Defendants shall send CAFA Notices in accordance with CAFA. The cost and expense associated with providing the CAFA Notice shall be borne solely by Defendants. The Preliminary Approval Order shall require that any recipient of the CAFA Notice who wishes to object to this Settlement or otherwise to be heard concerning this Settlement shall inform the Court in writing, and within the deadline provided by the Preliminary Approval Order, of his, her, or its intent to object to this Settlement and/or to appear at the Fairness Hearing by following the procedures, including meeting all applicable deadlines, set forth in the Class Notice as to Class Members. Any Person objecting to the Settlement or any aspect thereof must set forth any and all objections to this Settlement (legal and/or factual) and include any supporting papers and arguments.

2.1.3 <u>Class Certification.</u> In connection with seeking preliminary and final approval of the proposed Settlement, Plaintiff, through Plaintiff's Counsel, will seek orders (preliminary and final, respectively) certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(1), and Defendants shall consent to certification of the Settlement Class for purposes of this Settlement only and for no other purpose. The Parties agree that the Settlement Class should be treated as a mandatory or non-opt-out class. The Parties also agree that if the Court does not enter the Final Order, no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes with respect to the Parties revert to its status as of February 1, 2022. In such event, Defendants will not be deemed to have consented to the certification of any class, the agreements and stipulations in this Settlement Agreement concerning class definition or class certification shall not be used as evidence or argument to support class certification or class definition, and Defendants will retain all rights to oppose certification of the Settlement Class.

2.1.4 <u>Issuance of Class Notice.</u> Within ten (10) calendar days after entry of the Preliminary Approval Order, Defendants shall provide an

electronic file to the Settlement Administrator with the names, dates of birth, social security number, last known addresses, and Chesapeake investment information (specifically, holdings as of July 1, 2014, December 31, 2014, December 31, 2015, December 31, 2016, and December 28, 2017) of the Settlement Class to the extent available. The Parties and Settlement Administrator agree that this data shall be kept confidential pursuant to the terms of the Protective Order and will be used solely for the purpose of implementing this Settlement and may not be otherwise used or disclosed. Within the deadlines and in the manner set by the Court in the Preliminary Approval Order, the Settlement Administrator shall disseminate the Class Notice to the Settlement Class, which shall be provided with the opportunity to object to the certification of the Settlement Class, the Settlement, the Case Contribution Award, and the attorneys' fees, costs, and expenses sought by Plaintiff's Counsel. The cost of notice shall be paid first by the initial One Hundred Thousand Dollars and Zero Cents ($100,000), and any interest accrued thereon, pursuant to Section 2.5 below.

2.1.5   <u>The Fairness Hearing.</u> Upon entry of the Preliminary Approval Order, the Parties contemplate that the Court will schedule and then conduct a hearing at which it will consider whether the Settlement is fair, reasonable, and adequate ("Fairness Hearing") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Plaintiff will request that the Court determine, on or after the Fairness Hearing: (i) whether to enter judgment finally approving the Settlement (which judgment is referred to herein as the "Final Order"); (ii) whether the distribution of the Settlement Proceeds as provided in the Plan of Allocation should be approved or modified; (iii) whether Plaintiff's Counsel are entitled to an award of attorneys' fees, costs, and expenses, and the amount of those fees, costs, and expenses, as contemplated by Article 10 below; and (iv) whether Plaintiff shall be awarded a Case Contribution Award. Class Counsel shall submit their papers in support of final approval of the Settlement, the proposed Plan of Allocation, and Plaintiff's Counsel's applications for attorneys' fees, costs, expenses, and a Case Contribution Award at least forty-five (45) calendar days prior to the date of the Fairness Hearing. The Parties agree to support entry of a Final Order, including through any Review Proceeding, as contemplated by clause (i) of this Section 2.1.5 and as attached hereto as Exhibit 2. Defendants will not take any position with respect to the matters described in clauses (ii), (iii), or (iv) of this Section 2.1.5, so long as disposition of those matters is in accordance with the provisions of Articles 8 and 10 of

this Settlement Agreement. The Parties covenant and agree that they will reasonably cooperate with one another in obtaining the Final Order as contemplated herein at the Fairness Hearing and will not do anything inconsistent with this Settlement Agreement in seeking to obtain the Final Order.

2.2   Condition 2: Dismissal of the Action. The Final Order will seek dismissal with prejudice of the Action.

2.3   Condition 3: Finality of Final Order. The Final Order must be Final.

2.4   Condition 4: Independent Fiduciary Approval. Pursuant to Prohibited Transaction Exemption 2003-29, Defendants intend to submit the Settlement to an Independent Fiduciary for approval, along with the agreement by the Independent Fiduciary to agree to and execute the releases set forth in this Agreement on behalf of the Plan and Patterson Plan. Defendants shall request that the Independent Fiduciary make any and all determinations necessary to assess the applicability of the Class Exemption and whether to issue the release set forth in Section 3.1 on behalf of the Plan (including the Patterson Plan). All Parties shall cooperate in providing information to the Independent Fiduciary as requested. Defendants' insurers shall be responsible for the first $25,000 of submitting the Settlement Agreement to the Independent Fiduciary; any cost in excess of $25,000 will be deemed Settlement Expenses paid from the Class Settlement Amount. The report of the Independent Fiduciary's review of the Settlement will be submitted to the Parties and shall be filed with the Court on the timetable and in the manner set by the Court in the Preliminary Approval Order. Defendants have the right to terminate the Settlement by providing to Class Counsel written notice of their election to do so within ten (10) business days after receiving the report of the Independent Fiduciary if (i) the Independent Fiduciary has not approved the Settlement in accordance with the Class Exemption or stated that, in the judgment of the Independent Fiduciary, the Settlement would constitute a prohibited transaction under Section 406 of ERISA; or (ii) the Plan (including the Patterson Plan), acting by and through the Independent Fiduciary, has not agreed in writing to grant the release set forth in Section 3.1 upon the Effective Date. Defendants, in their sole discretion, may waive this condition.

2.5   Condition 5: Funding of Class Settlement Amount. Defendants' insurers shall forward the following sums to the Escrow Agent, to be deposited by the Escrow Agent into the Settlement Fund Account. Defendants' insurers will fund the first One Hundred Thousand Dollars and Zero Cents ($100,000) of the Class Settlement Amount within twenty (20) business days of (i) the entry of the Preliminary Approval Order and (ii) receiving the necessary payment

information required in Section 7.1.1 below. Defendants' insurers will fund the remaining Fourteen Million, Nine Hundred Thousand Dollars and Zero Cents ($14,900,000) of the Class Settlement Amount within fourteen (14) business days of (i) the Effective Date and (ii) receiving the necessary payment information required in Section 7.1.1 below. The Class Settlement Amount shall constitute full and final settlement of the Settlement Class's claims that were or could have been asserted in the Action. Neither Defendants nor Defendants' insurers will have an obligation to fund any amounts in excess of the Class Settlement Amount, including any fees, costs, expenses, or Case Contribution Award incurred or paid by Plaintiff or Plaintiff's Counsel, and under no circumstances shall Defendants or Defendants' insurers' total obligation under this Settlement exceed the Class Settlement Amount and the amount to be paid pursuant to Section 2.4 for the Independent Fiduciary.

2.6     Condition 6: Resolution of any CAFA objection. In the event that any recipient of the CAFA Notice objects to and requests material modifications to the Settlement, Plaintiff agrees to cooperate and work with Defendants to overcome such objection(s) and requested material modifications but has no obligation to alter any material term or condition of the Settlement. In the event such objection(s) or requested material modifications are not overcome, Defendants shall have the right to terminate the Settlement Agreement pursuant to its applicable procedures.

## 3.     RELEASES

3.1     Release of Released Parties. Upon occurrence of the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Order shall have, **FULLY, FINALLY, AND FOREVER RELEASED**, and are **FOREVER BARRED** from the prosecution of, any and all Released Claims against any and all of the Released Parties, except that the release shall not preclude any action or claim related to the implementation and/or enforcement of the Settlement Agreement. The Release in this Section 3.1 is in addition to the effect of the Final Order entered in accordance with this Settlement.

3.2     Scope of Releases.

3.2.1   The Releases set forth in this Article 3 hereof, and as approved by the Court as described herein, are not intended to include the release of any rights or duties arising directly out of this Settlement Agreement, including the express warranties and covenants contained herein.

3.2.2    The Releases set forth in this Settlement Agreement, and as approved by the Court as described herein, shall be effective as a bar to any and all currently unsuspected, unknown, partially known or known claims related to and within the scope of the express terms and provisions of the Released Claims. Accordingly, Plaintiff (on behalf of the Releasing Parties) hereby expressly waives, and Defendants (on behalf of the Released Parties) hereby expressly waive, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code, or by any similar, comparable, or equivalent law of any state or territory of the United States with regard to Released Claims. Section 1542 reads in pertinent part:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and any similar, comparable, or equivalent law of any state or territory of the United States, was separately bargained for and that neither Plaintiff, the Releasing Parties, Defendants, nor the Released Parties would consent to this Settlement Agreement unless it included a broad release of all unknown claims. Each expressly agree that all release provisions in the Settlement Agreement shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected or future claims, demands, and causes of action. Plaintiff assumes for himself on his own behalf and on behalf of the Releasing Parties the risk of his, her, or its respective subsequent discovery or understanding of any matter, fact, or law, that, if now known or understood, would in any respect have affected his, her, or its entering into this Settlement Agreement.

4. **COVENANTS**

Upon the occurrence of the Effective Date, the Parties covenant and agree as follows:

4.1     Covenants Not to Sue.

   4.1.1   The Releasing Parties **COVENANT AND AGREE** (i) not to file or maintain against any Released Parties or the Plan (including the Patterson Plan) any Released Claim released under Article 3 hereof; and (ii) that the covenants and agreements herein shall be a complete defense to any such Released Claims against any of the respective Released Parties and the Plan (including the Patterson Plan). Nothing in this Settlement Agreement precludes Settlement Class members from receiving any benefits under the terms of the Plan (including the Patterson Plan) to which they are otherwise entitled.

   4.1.2   Released Parties **COVENANT AND AGREE** (i) not to file or maintain against any other Released Party any Released Claim released under Article 3 and (ii) that the covenants and agreements herein shall be a complete defense to any such claims against any of the respective Released Parties with respect to the released claims.

   4.1.3   Defendants, and their Successors-in-Interest, **COVENANT AND AGREE** not to file or maintain against Plaintiff, Plaintiff's Counsel, or Class Counsel any claim arising from or related to the prosecution or resolution of this Action and stipulate and agree that the covenants and agreements herein shall be a complete defense to any such claims against any Plaintiff, Plaintiff's Counsel, or Class Counsel. However, neither this provision nor anything else in this Settlement Agreement shall preclude any action or claim related to the implementation and/or enforcement of the Settlement Agreement.

4.2     Cooperation. The Parties shall cooperate in good faith to complete the Settlement, including to address any timely-filed objection to the Settlement, any objection or concern raised by the Independent Fiduciary, and any objection or concern raised by the Department of Labor, including, to the extent reasonably necessary and practicable, by promptly supplying any non-privileged information in their possession that has been reasonably requested.

4.3     Taxation of Class Settlement Amount. Plaintiff acknowledges on his own behalf, and on behalf of the Releasing Parties, that the Released Parties have no responsibility for any taxes due on funds once deposited in the Settlement

Fund or that Plaintiff's Counsel receive from the Settlement Fund, should any be awarded pursuant to Article 10 hereof. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Settlement Fund.

## 5.    REPRESENTATIONS AND WARRANTIES

5.1    <u>Plaintiff's Representations and Warranties</u>.

5.1.1    Plaintiff represents and warrants that he has not assigned or otherwise transferred any interest in any Released Claims against any Released Party, and further covenants that he will not assign or otherwise transfer any interest in any Released Claims; and

5.1.2    Pursuant to Articles 3 and 4 hereof, Plaintiff represents and warrants that upon the occurrence of the Effective Date he shall have no surviving claim or cause of action against any of the Released Parties or the Plan (including the Patterson Plan) with respect to Released Claims.

5.1.3    Plaintiff expressly disclaims: any duty by any of the Released Parties or by anyone acting for them to disclose anything related to the subject matter of this Settlement Agreement, reliance of any kind on any statement, promise, representation, disclosure, non-disclosure, or omission by any of the Released Parties or by anyone acting for them in connection with entering into and executing this Settlement Agreement, except as is expressly stated in this Agreement; and any claim that he was fraudulently induced to enter into this Agreement.

5.2    <u>Parties' Representations and Warranties.</u> The Parties, and each of them, represent and warrant:

5.2.1    That they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel, that in agreeing to this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and that, except as expressly provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Party or

by any Person representing any Party to this Settlement Agreement. Each of the Parties assumes the risk of mistake as to facts or law; and

5.2.2   That they have had the opportunity to carefully read the contents of this Settlement Agreement, have in fact carefully reviewed the Settlement Agreement, and have freely agreed to the Settlement. The Parties and each of them further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, or it deems necessary.

5.3   <u>Signatories' Representations and Warranties</u>. Each individual executing this Settlement Agreement on behalf of any Party does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

## 6.   NO ADMISSION OF LIABILITY

The Parties understand and agree that this Settlement Agreement embodies a compromise settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding of fiduciary status under ERISA or wrongdoing by any of the Released Parties, or give rise to any inference of fiduciary status under ERISA or wrongdoing or admission of wrongdoing or liability in this or any other proceeding. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. Moreover, Defendants specifically deny any such liability or wrongdoing. Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence, in any action or proceeding for any purpose, except (i) in an action or proceeding arising under this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Order, or (ii) in an action or proceeding where the Releases or the Covenants Not to Sue provided pursuant to this Settlement Agreement may serve as a bar to the prosecution of such action or proceeding as well as to any recovery in such action or proceeding.

## 7.   THE SETTLEMENT FUND AND DELIVERIES INTO THE SETTLEMENT FUND

7.1   <u>The Settlement Fund</u>.

7.1.1   The Escrow Agent shall establish, at a federally chartered financial institution reasonably acceptable to Defendants, an account for the safekeeping of the Settlement Fund ("Settlement Fund Account"). The Settlement Fund shall be created as set forth in Sections 1.46 and

2.5 hereof. Class Counsel shall provide to Defendants:  (i) written notice of the date of establishment of the Settlement Fund Account, (ii) written notice of the following information regarding the Financial Institution and the Settlement Fund Account:  bank name, bank address, ABA number, account number, account name, and IRS Form W-9 and taxpayer identification number, and (iii) any additional information needed for Defendants' insurers to deposit the Class Settlement Amount into the Settlement Fund Account. Class Counsel shall direct the Settlement Administrator to make distributions by wire transfer or check from the Settlement Fund Account only in strict accordance with the Settlement Agreement and Court orders. No other distributions may be authorized by Class Counsel or Plaintiff's Counsel.

7.1.2   The Settlement Fund shall be invested only in short-term United States Agency or Treasury securities (and/or mutual funds or money market accounts that invest exclusively in such securities) or in a fully U.S. Government-insured account and shall include interest earned thereon, for the benefit of Plaintiff and the Settlement Class. The Settlement Fund shall be structured and managed by Class Counsel to qualify as a qualified settlement fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder. It is intended that the Settlement Fund be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with ERISA-qualified plans. The Parties agree that the Settlement Fund will not make, and Class Counsel will not make on the Settlement Fund's behalf, an election under Treasury Regulation § 1.468B-1(k), pursuant to which the Settlement Fund would be treated as a grantor trust for federal income tax purposes. All taxes on the income of the Settlement Fund and tax-related expenses incurred in connection with the taxation of the Settlement Fund shall be the responsibility of Plaintiff and the Settlement Class and shall be paid out of the Settlement Fund.

7.1.3   All fees, costs, and expenses, including fees, costs, and expenses incurred by the Settlement Administrator or any other third-party vendor for calculation, allocation, and distribution pursuant to the Plan of Allocation, and providing support, such as the hosting of a website and call line, will be paid from the Settlement Fund, subject to the provisions of Article 8 hereof.

7.1.4   All fees, costs, and expenses, including (i) expenses associated with the preparation and filing of all tax reports and tax returns required to

be filed by the Settlement Fund; (ii) payment of any taxes owed by the Settlement Fund; (iii) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the Settlement Fund; and (iv) fees charged and expenses incurred by the Escrow Agent associated with administration of the Settlement Fund, will be paid from the Settlement Fund, subject to the provisions of Article 8 hereof.

7.1.5   Other than Defendants' insurers' obligation to fund the Class Settlement Amount in accordance with Section 2.5, Defendants and the Released Parties shall have no responsibility for the Settlement Fund or the Settlement Fund Account.  Defendants and Released Parties shall not be liable for claims relating to any act or omission of Plaintiff's Counsel, the Settlement Administrator, or the Escrow Agent relating to the Settlement Fund or Settlement Fund Account, or any loss of funds in the Settlement Fund Account.

7.2   <u>Sole Monetary Contribution</u>. Except as provided in Sections 2.4 and 7.2.1, the Class Settlement Amount shall be the full and sole monetary contribution made by or on behalf of the Released Parties in connection with the Settlement effected between Plaintiff and Defendants under this Settlement Agreement. The Released Parties shall not make any other monetary contribution for any costs, expenses, attorneys' fees, or other amount associated with or related to the Action or Settlement.

7.2.1   Notwithstanding Section 7.2, Defendants (or Defendants' insurers to the extent covered under the insurers' respective insurance policies) shall be solely responsible for the payment of any and all fees, costs, and expenses incurred by Defendants' attorneys arising from or related to effectuating this Settlement and/or defending the Action, including the cost and expense associated with providing the CAFA Notice.   However, neither this provision nor anything else in this Settlement Agreement shall preclude any action or claim related to the implementation and/or enforcement of the Settlement Agreement, and the recovery of fees, costs, and expenses for such an action or claim.

7.3   All funds held by the Escrow Agent shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed or returned to the party or parties paying the same pursuant to this Agreement and/or further order(s) of the Court.

7.4   In the event that (a)(i) a case is commenced under Title 11 of the United States Code as to any Defendant that contributed to the Class Settlement Amount or any insurer that did so on any Defendant's behalf; or (ii) a trustee,

receiver, conservator, or other fiduciary is appointed with respect to any such Defendant or insurer under any similar law; (b) a court of competent jurisdiction enters a final order finding such contribution or any portion thereof to be a preference, voidable transfer, fraudulent transfer or similar transaction and requiring such contribution or portion thereof to be returned; and (c) such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Class Counsel, the Parties shall jointly move the Court to terminate this Settlement Agreement and to vacate any Releases given or judgment entered in favor of the Defendants. Upon the granting of such motion, the Action will for all purposes with respect to the Parties revert to its status as of February 1, 2022.

## 8. PAYMENTS FROM THE SETTLEMENT FUND

Except as otherwise described or provided for herein, all costs relating to the Settlement shall be borne by the Party that incurred them.

8.1 <u>Settlement Expenses</u>. Settlement Expenses are (i) any and all reasonable costs and expenses borne by the Settlement Administrator charged to the Settlement Fund that are related to the administration of the Settlement and not otherwise expressly provided for herein; (ii) the reasonable costs and expenses borne by the Settlement Administrator regarding the administration of carrying out the Plan of Allocation to administer the allocation of the Settlement Proceeds to the members of Settlement Class; (iii) any reasonable costs relating to the issuance of Class Notice, excluding the expenses borne by Defendants or the Company of providing the Settlement Administrator with a list of the names and last known addresses of members of the Settlement Class in electronic format; and (iv) any cost in excess of the first $25,000 of submitting the Settlement Agreement to an Independent Fiduciary for approval, as described in Section 2.4 above. All Settlement Expenses (including those described in Section 7.1.3) shall be paid from the Settlement Fund prior to the distribution of the Settlement Proceeds. With respect to taxes after remittance of the Settlement Proceeds to the Settlement Class, the Settlement Class members are responsible for any and all tax liabilities arising from each of their distributions or withdrawals. All other fees, costs, and expenses relating to the Settlement shall be borne by the Party that incurred them, or his, her, or its insurer or indemnitor, and shall not be paid from the Settlement Fund.

8.1.1 No Defendant(s), Defendants' counsel, Plaintiff, Plaintiff's Counsel, or Class Counsel makes any representation or warranty with respect to the tax treatment of any distribution or withdrawal of the Settlement Proceeds received by any Plaintiff or Settlement Class member.

Settlement Class members are specifically directed to seek tax advice from their tax advisor.

8.2     <u>Disbursements from the Settlement Fund</u>. Following the Effective Date, Class Counsel may direct the disbursement of money from the Settlement Fund, which shall be the sole source of all awards for the Settlement Class, Plaintiff, and fees, costs, and expenses for Plaintiff's Counsel, as follows:

8.2.1     <u>For Case Contribution Award</u>. As provided in Section 10.2 hereof, after the Effective Date, Class Counsel may direct payment from the Settlement Fund to Plaintiff of any Court-approved Case Contribution Award.

8.2.2     <u>For Taxes and Expenses of the Settlement Fund</u>. As provided in Section 7.1.2 hereof.

8.2.3     <u>For the Plan of Allocation</u>.

8.2.3.1.     Class Counsel shall propose to the Court the Plan of Allocation attached as Exhibit 3. To the extent they were participants or beneficiaries of the Plan at any time during the Class Period, Defendants and their Immediate Family Members will be excluded from the Plan of Allocation.

8.2.3.2.     The Settlement Administrator shall be solely responsible for implementing the Plan of Allocation, including calculating and distributing the Settlement Proceeds to Settlement Class members, and for the issuance of any tax notices arising from the payments made pursuant to the Plan of Allocation. Except for providing the data set forth in Section 2.1.4 to the extent available, Defendants and Released Parties shall have no responsibility for the allocation and distribution of the Settlement Fund and shall not be liable for any claims by, through, or under any member of the Settlement Class or any third party relating to the allocation or distribution of the Settlement Fund or Settlement Proceeds, including but not limited to any claims regarding the adequacy of payment or failure to make payment or that a member of the Settlement Class should have been allocated or distributed a different amount of the Settlement Fund than it actually received or than provided by the Settlement, including the Plan of Allocation.

8.2.3.2    If any Person is paid a portion of the Settlement Proceeds which he or she was not entitled to receive, and some other Person asserts a claim against any of the Released Parties for payment of all or a portion of those Settlement Proceeds, then the Person who received those Settlement Proceeds shall be liable for any payment to the Person who is determined to have been properly owed that amount. Defendants and Released Parties shall have no responsibility for making any additional payments under the Settlement Agreement, as provided in Section 7.2 hereof.  The Releases, Covenants Not to Sue, and Dismissal shall be effective, regardless of whether or not particular members of the Settlement Class did or did not receive payment from the Settlement Proceeds and regardless of whether or not any Person who was obligated to pay some or all of the distributed funds to another Person in fact made such payment to such other Person.  The failure of a Settlement Class member to receive a payment from the Settlement Proceeds, or the failure of a Person to make payment to another Person, shall not be a defense to the enforcement of the Releases, Covenants Not to Sue, and Dismissal.

8.2.3.3    The Plan of Allocation is a matter separate and apart from the Settlement between the Parties, and no decision by the Court concerning the Plan of Allocation shall affect the validity of the Settlement Agreement or finality of the Settlement in any manner.

8.2.4    <u>For Attorneys' Fees, Costs, and Expenses</u>. As provided in Section 10.1 hereof, after the Effective Date, Class Counsel may direct payment to Plaintiff's Counsel of any Court-approved award of attorneys' fees, costs, and expenses from the Settlement Fund, which shall be Plaintiff's Counsel's sole source of recourse for payment of its attorneys' fees, costs, and expenses.

## 9.    TERMINATION

9.1    <u>Termination Events</u>. Defendants and Plaintiff shall each have the right to terminate the Settlement and this Settlement Agreement by providing written notice of their election to do so to the others within thirty (30) calendar days after any of the following occurs:

9.1.1   If the Court refuses to approve this Settlement Agreement or any material part of it;

9.1.2   If the Court declines to enter the Preliminary Approval Order in any material respect;

9.1.3   If the Court declines to enter the Final Order in any material respect;

9.1.4   The date upon which the Final Order is modified or reversed in any material respect by the United States Court of Appeals for the Tenth Circuit or the Supreme Court of the United States;

9.1.5   The date upon which an Alternative Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Tenth Circuit or the Supreme Court of the United States; or

9.1.6   If any of the conditions of Article 2 of this Settlement Agreement are not fully satisfied or waived in accordance with their terms and on the timetables set forth in that Article.

9.1.7   Notwithstanding anything in this Section, the Parties agree that no decision by the Court concerning the Plan of Allocation (including under Section 2.1.5), attorneys' fees, costs, or expenses, and/or a Case Contribution Award, shall affect the validity of the Settlement Agreement or finality of the Settlement in any manner. Plaintiff and Plaintiff's Counsel may not cancel or terminate the settlement or the Settlement Agreement based on the Court's, or any other court's, ruling with respect to the Plan of Allocation, attorneys' fees, costs, or expenses, and/or a Case Contribution Award.

9.2   <u>Consequences of Termination of the Settlement Agreement</u>. If the Settlement Agreement is terminated for any reason specified in the Settlement Agreement, the following shall occur:

9.2.1   The Action shall for all purposes with respect to the Parties revert to its status as of February 1, 2022.

9.2.2   All provisions of this Settlement Agreement and any subsequently related documents shall be null and void having no effect and no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes with respect to the Parties revert to its status as of February 1, 2022, as provided in Section 2.1.3. Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose.

9.2.3  Upon receipt of written notice that the Settlement Agreement has been terminated, the Escrow Agent will return the Settlement Fund to Defendants' insurers within ten (10) business days, together with interest thereon and less any Agreed Expenses. Agreed Expenses are any taxes on the Settlement Fund as described in Section 7.1.2, the costs of notice as described in Section 2.1.4 of this Settlement Agreement incurred up to and including the date of receipt of written notice from the Defendants by the Escrow Agent, and any payments made from the Settlement Fund to the Independent Fiduciary.

## 10.   ATTORNEYS' FEES, COSTS, AND EXPENSES

10.1  <u>Application for Attorneys' Fees, Costs, and Expenses</u>. Plaintiff and Class Counsel may apply to the Court for an award of reasonable attorneys' fees, costs, and expenses. Defendants will not take any position on any fee motion submitted by Class Counsel, provided that Class Counsel does not move for an award of attorneys' fees in excess of one-third of the Settlement Fund, and Defendants will not take any position on any motion for reimbursement of litigation costs and expenses reasonably incurred in prosecuting the Action. Class Counsel shall be entitled to receive such compensation from the Settlement Fund to the extent awarded by the Court (or as modified, if necessary, following any appeal). Fees, costs, or expenses awarded to Plaintiff's Counsel by the Court shall not be payable to Class Counsel before the Effective Date. Plaintiff and Class Counsel represent and warrant that no other attorney is involved in this case on Plaintiff's behalf except for the Persons listed as Plaintiff's Counsel, and that Defendants and the Released Parties will bear no responsibility for any attorneys' fees, costs, or expenses sought by any Person, which shall be borne exclusively from any attorneys' fees, costs, and expenses awarded by the Court from the Settlement Fund.

10.2  <u>Application for Case Contribution Award</u>. Class Counsel may apply to the Court for a Case Contribution Award for Plaintiff, payable solely from the Settlement Fund, and Plaintiff shall be entitled to receive such compensation from the Settlement Fund to the extent awarded by the Court (or as modified, if necessary, following any appeal). Defendants expressly agree to take no position with respect to the Case Contribution Award(s). No Case Contribution Award may be paid before the Effective Date.

## 11.   MISCELLANEOUS PROVISIONS

11.1  <u>Governing Law</u>. This Settlement Agreement shall be governed by the laws of the State of Oklahoma without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the

United States governs any matter set forth herein, in which case such federal law shall govern.

11.2 <u>Venue</u>. Venue for any disputes relating in any way to this Agreement shall lie exclusively in the United States District Court for the Western District of Oklahoma.

11.3 <u>Severability</u>. The provisions of this Settlement Agreement are not severable, except that in the event that any court with original or appellate jurisdiction over this Action issues a Final determination that any portion of Section 3.1 hereof is not enforceable, the Parties may (but shall not be required to) jointly agree in writing to modify Section 3.1 to conform with such determination. Further, in the event that the Court or any court with appellate jurisdiction over this Action fails to award (i) attorneys' fees, costs, and expenses pursuant to Section 10.1 hereof or (ii) a Case Contribution Award pursuant to Section 10.2 hereof, in the amount sought by Class Counsel or Plaintiff, such decision shall not provide cause for Plaintiff or Class Counsel to withdraw, void, or nullify this Settlement Agreement.

11.4 <u>Amendment</u>. Before entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties with notice to be given to the Court of the agreed modification or amendment. Following entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

11.5 <u>Waiver</u>. The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

11.6 <u>Construction</u>. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

11.7 <u>Headings</u>. The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

11.8 <u>Singular and Plural</u>. Definitions apply to the singular and plural forms of each term defined.

11.9 <u>Gender</u>. Definitions apply to the masculine, feminine, and neuter genders of each term defined.

11.10 <u>References to a Person</u>. References to a Person are also to the Person's Successor-in-Interest.

11.11 <u>Terms of Inclusion</u>. Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.12 <u>Further Assurances</u>. Each of the Parties agrees, without further consideration and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement. The Parties shall in good faith attempt to address any timely-filed objection to the Settlement, any objection or concern raised by the Independent Fiduciary, and any objection or concern raised by the Department of Labor, the U.S. Attorney General, or the Attorneys General of any State, including, to the extent reasonably necessary and practicable, by promptly supplying any non-privileged information in their possession that has been reasonably requested.

11.13 <u>Survival</u>. All representations, warranties, and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of this Settlement Agreement.

11.14 <u>Notices</u>. Any notice, demand, or other communication under this Settlement Agreement (other than the Class Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered, by registered or certified mail (postage prepaid), by confirmed facsimile or email, or by reputable express overnight courier:

If to the PLAINTIFF:

> BAILEY & GLASSER LLP
> Gregory Y. Porter
> Mark G. Boyko
> 1054 31st Street NW, Suite 230
> Washington, D.C. 20007
> Telephone: (202) 463-2101
> Facsimile: (202) 463-2103
> gporter@baileyglasser.com
> mboyko@baileyglasser.com

**Execution Version**

       If to the DEFENDANTS:

            Travis J. Sales
            Tina Q. Nguyen
            BAKER BOTTS L.L.P.
            910 Louisiana Street
            Houston, Texas 77002-4995
            Telephone: (713) 229-1234
            Facsimile: (713) 229-1522
            travis.sales@bakerbotts.com
            tina.nguyen@bakerbotts.com

11.15 <u>Entire Agreement</u>. This Settlement Agreement contains the entire agreement among the Parties relating to this Settlement.

11.16 <u>Counterparts</u>. This Settlement Agreement, and any amendments thereto, and waivers of conditions, may be executed by exchange of faxed or electronically mailed executed signature pages, and any signature transmitted by facsimile or electronic mail for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.17 <u>Binding Effect</u>. This Settlement Agreement binds and inures to the benefit of the Parties hereto, their assigns, heirs, administrators, executors, and Successor-in-Interest.

11.18 <u>Communications Regarding Settlement and this Action</u>. The Parties agree that they will not issue any press releases that are not mutually agreed upon. The Parties further agree not to engage in disparagement of the Settlement.

    IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

[Execution Pages Follow]

Execution Version

WITNESS MY HAND to this instrument on this the 15ᵗʰ day of
_____April_____, 2022.

_____Chris S. Snider_____
Christopher Snider, Individually and on behalf of
the Seventy Seven Energy Inc. Retirement &
Savings Plan, the Seventy Seven Energy LLC
Retirement & Savings Plan, Patterson-UTI Energy,
Inc. 401(k) Profit Sharing Plan, and their
Successors-in-Interest

STATE OF Oklahoma §
§
COUNTY OF Oklahoma §

BEFORE, ME, the undersigned authority, on this day personally appeared
Christopher Snider, known to me to be the person whose name is subscribed to the
foregoing instrument, and acknowledged to me that he executed the same for the purposes
and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this 15 day of
_____April_____, 2022.

_____Susan Kirkpatrick_____
Notary Public in and for the State of Oklahoma

SUSAN KIRKPATRICK
NOTARY
#20004620
EXP 04/29/24
PUBLIC
STATE OF OKLAHOMA

26

**Execution Version**

ON BEHALF OF PLAINTIFF AND PROPOSED SETTLEMENT CLASS:

Dated: 4/15/2022

BAILEY & GLASSER LLP
Gregory Y. Porter
Mark G. Boyko
1054 31st Street NW, Suite 230
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Dated: 4/18/22

IZARD KINDALL & RAABE LLP
Douglas P. Needham
Oren Faircloth
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

Dated: 4/15/2022

LATHAM, WAGNER, STEELE, &
LEHMAN
Bob L. Latham
James Colvin
1515 E. 71st Street, Suite 200
Tulsa, OK 74136
Telephone: (918) 382-7523
Facsimile: (918) 970-2002

*Counsel for Plaintiff Christopher Snider
on behalf of the Plan and the Proposed
Settlement Class*

27

**Execution Version**

WITNESS MY HAND to this instrument on this the _14th_ day of _____April_____, 2022.

_____
Patterson-UTI Energy, Inc.

By: _____

Title: _____CFO_____

STATE OF _Texas_ §
§
COUNTY OF _Harris_ §

BEFORE, ME, the undersigned authority, on this day personally appeared _C. Andrew Smith_, on behalf of Patterson-UTI Energy, Inc., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this _14th_ day of _____April_____, 2022.

_____
Notary Public in and for the State of _Texas_

PEGGY ANN RABALAIS
NOTARY PUBLIC
STATE OF TEXAS
ID# 126301590
EXPIRES 11-12-2023

28

ON BEHALF OF DEFENDANTS:

Dated: __April 15, 2022_____

BAKER BOTTS L.L.P.
Travis J. Sales
Tina Q. Nguyen
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

Dated: _____

MCAFEE & TAFT
A Professional Corporation
Spencer F. Smith
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439

*Counsel for Defendants Administrative Committee of the Seventy Seven Energy Inc. Retirement and Savings Plan, Cary Baetz, Karl Blanchard, Christin Borden, Linda Clark, Clint Cover, Gina DeMarco, Lance Haffner, and Jerome Loughridge*

**Execution Version**

ON BEHALF OF DEFENDANTS:

Dated: _____

                                _____

                                BAKER BOTTS L.L.P.
                                Travis J. Sales
                                Tina Q. Nguyen
                                910 Louisiana Street
                                Houston, Texas 77002-4995
                                Telephone: (713) 229-1234
                                Facsimile: (713) 229-1522

Dated: _____4 - 14 - 22_____

                                _____

                                MCAFEE & TAFT
                                A Professional Corporation
                                Spencer F. Smith
                                Tenth Floor, Two Leadership Square
                                211 North Robinson
                                Oklahoma City, Oklahoma 73102-7103
                                Telephone: (405) 235-9621
                                Facsimile: (405) 235-0439

                                *Counsel for Defendants Administrative Committee of the Seventy Seven Energy Inc. Retirement and Savings Plan, Cary Baetz, Karl Blanchard, Christin Borden, Linda Clark, Clint Cover, Gina DeMarco, Lance Haffner, and Jerome Loughridge*

**Execution Version**

## EXHIBIT LIST

Exhibit 1:          Proposed Order Granting Preliminary Approval of Class Action Settlement, Preliminarily Certifying a Class for Settlement Purposes, Approving Form and Manner of Class Notice, Preliminarily Approving Plan of Allocation, and Setting Date for Fairness Hearing ("Preliminary Approval Order")

Exhibit 1.A.:     Class Notice of Settlement

Exhibit 2:          Proposed Order and Final Judgment ("Final Order")

Exhibit 3:          Proposed Plan of Allocation

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| CHRISTOPHER SNIDER, on behalf of the Seventy Seven Energy Inc. Retirement & Savings Plan and a class of similarly situated participants of the Plan, | ) ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-20-977-D |
|  | ) |  |
| ADMINISTRATIVE COMMITTEE, SEVENTY SEVEN ENERGY INC. RETIREMENT & SAVINGS PLAN; et al. | ) ) ) ) |  |
| Defendants. | ) |  |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES, APPROVING FORM AND MANNER OF CLASS NOTICE, PRELIMINARILY APPROVING PLAN OF ALLOCATION, AND SETTING DATE FOR FAIRNESS HEARING**

Plaintiff Christopher Snider has moved pursuant to Federal Rule of Civil Procedure 23(e) for an order preliminarily approving the Settlement of this Action, in accordance with the Class Action Settlement Agreement, dated April 18, 2022 (the "Settlement Agreement"), which, together with the exhibits thereto, sets forth the terms and conditions for a proposed Settlement of this action.[1]

The Court preliminarily considered the Settlement Agreement to determine, among other things, whether the Settlement is sufficient to warrant the issuance of notice to members of the proposed Settlement Class. Upon reviewing the Settlement Agreement, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

---

[1] Capitalized terms not otherwise defined in this Order shall have the same meaning as ascribed to them in the Settlement Agreement.

1.     **Class Findings:** Solely for the purposes of the Settlement, the Court finds that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court, and any other applicable law have been met as to the Settlement Class defined below, in that:

(a)     The Court preliminarily finds for purposes of settlement only, as required by Fed. R. Civ. P. 23(a)(1), that the members of the Settlement Class are sufficiently numerous that their joinder before the Court would be impracticable.

(b)     The Court preliminarily finds for purposes of settlement only, as required by Fed. R. Civ. P. 23(a)(2), that there are one or more questions of fact and/or law common to the Settlement Class.

(c)     The Court preliminarily finds for purposes of settlement only, as required by Fed. R. Civ. P. 23(a)(3), that the claims of Plaintiff are typical of the claims of the Settlement Class.

(d)     The Court preliminarily finds, for purposes of settlement only, as required by Fed. R. Civ. P. 23(a)(4), that Plaintiff will fairly and adequately protect the interests of the Settlement Class in that: (i) the interests of Plaintiff and the nature of his alleged claims are consistent with those of the members of the Settlement Class; (ii) there appear to be no conflicts between or among Plaintiff and the Settlement Class; and (iii) Plaintiff and the members of the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions.

(e)     The Court preliminarily finds for purposes of settlement only, as required by Fed. R. Civ. P. 23(b)(1), that the prosecution of separate actions by individual members of the Settlement Class would create a risk of: (i) inconsistent or varying adjudications as to individual Settlement Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in this Action; or (ii) adjudications as to individual Settlement Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede the ability of such persons to protect their interests.

(f)     The Court preliminarily finds for purposes of settlement only, as required by Fed. R. Civ. P. 23(g), that Class Counsel are capable of fairly and adequately representing the interests of the Settlement Class, in that Class Counsel: (i) have done appropriate work identifying or investigating potential claims in the action; (ii) are experienced in handling ERISA class actions, (iii) are knowledgeable of the applicable law, and (iv) have committed the necessary resources to represent the Settlement Class.

2.     **Class Certification**: The Court, in conducting the settlement approval process required by Fed. R. Civ. P. 23, certifies solely for purposes of settlement the following class under Fed. R. Civ. P. 23(b)(1) (the "Settlement Class"):

> All persons, except Defendants and their Immediate Family Members, who were participants in or beneficiaries of the Seventy Seven Energy Inc. Retirement & Savings Plan, Seventy Seven Energy LLC Retirement & Savings Plan, Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan, and their Successors-in-Interest (collectively, the "Plan") at any time from July 1, 2014 to February 28, 2021, inclusive (the

3

"Class Period"), and whose Plan accounts included any investment in Chesapeake Energy Corporation at any time during such period.

The Court appoints Settlement Class member Christopher Snider as representative for the Settlement Class and appoints Bailey & Glasser LLP, Izard Kindall & Raabe LLP, and Latham, Wagner, Steele & Lehman as Class Counsel for the Settlement Class.

Preliminary certification of a Settlement Class pursuant to the terms of the Settlement Agreement shall not constitute and does not constitute, and shall not be construed or used as an admission, concession, or declaration by or against Defendants that (except for the purposes of the Settlement) this Action or any other action is appropriate for litigation class treatment under Fed. R. Civ. P. 23, or any similar federal or state class action statute or rule.

3. **Preliminary Findings Regarding Proposed Settlement**: The Court preliminarily finds that (i) the proposed Settlement resulted from extensive arm's-length negotiations, including mediation, (ii) the Settlement Agreement was executed only after Class Counsel had conducted appropriate investigation and discovery regarding the strengths and weaknesses of Plaintiff's claims, (iii) Class Counsel have concluded that the proposed Settlement is fair, reasonable, and adequate, and (iv) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Settlement Class.  Having considered the essential terms of the Settlement under the recommended standards for preliminary approval of settlements as set forth in relevant case law, the Court finds that those whose claims would be settled, compromised, dismissed, and/or released pursuant to the Settlement should be given

notice and an opportunity to be heard regarding final approval of the Settlement and other matters.

4.      **Fairness Hearing**: A hearing is scheduled for _____ , 2022 at _____ ___.m. (the "Fairness Hearing") to determine, among other things:

- Whether the Settlement merits final approval as fair, reasonable, and adequate;

- Whether the Action should be dismissed with prejudice pursuant to the terms of the Settlement;

- Whether Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement;

- Whether the proposed Plan of Allocation should be approved; and

- Whether any application(s) for attorneys' fees, costs, and expenses and Case Contribution Award to Plaintiff are fair and reasonable and should be approved.

5.      **Class Notice**: The Court hereby approves the selection of Kurtzman Carson Consultants LLC as the Settlement Administrator and Escrow Agent.

6.      The Plaintiff has presented to the Court a proposed Class Notice (attached as Exhibit A).

7.      The Court hereby approves, as to form and content, the Class Notice.

8.      The Court finds that the Class Notice fairly and adequately: (a) describes the terms and effect of the Settlement, including the Plan of Allocation; (b) notifies the Settlement Class that Plaintiff's Counsel will seek attorneys' fees and reimbursement of costs and expenses from the Settlement Fund, and for a Case Contribution Award for Plaintiff for his service in such capacity; (c) gives notice to the Settlement Class of the time and place of the Fairness Hearing; and (d) describes how the recipients of the Class

Notice may object to any of the relief requested. Plaintiff has proposed the following manner of communicating the notice to members of the Settlement Class, and the Court finds that such proposed manner is (i) the best notice practicable under the circumstances, (ii) constitutes notice reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Fairness Hearing, (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to notice, and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law.  Accordingly, the Court directs that:

- Within ten (10) calendar days after entry of this Order, Defendants shall provide an electronic file(s) to the Settlement Administrator with the names, dates of birth, social security numbers, last known addresses, and Chesapeake investment information of the Settlement Class to the extent available.  The Parties and Settlement Administrator agree that this data shall be kept confidential pursuant to the terms of the Protective Order and will be used solely for the purpose of implementing this Settlement and may not be otherwise used or disclosed.

- Within twenty-one (21) calendar days after entry of this Order, the Settlement Administrator will (a) cause the Class Notice, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be mailed, by first-class mail, postage prepaid, to the last known address of each member of the Settlement Class who can be identified by reasonable effort, and (b) post the Class Notice, the Settlement Agreement and its exhibits, and this Order on the dedicated Settlement Website, which shall be accessible to the public.

**9.**     At or before the Fairness Hearing, Class Counsel shall file with the Court proof of timely compliance with the foregoing mailing and publication requirements.

**10.    Notice Expenses**: The expenses of printing and mailing and publishing all notices required hereby shall be paid from the Settlement Fund.

**11.     Objections to Settlement**: The Court will consider written comments and/or objections to the Settlement, to the Plan of Allocation, to the proposed award of attorneys' fees, costs, and expenses, or to the request for a Case Contribution Award for Plaintiff so long as such written comments or objections are filed with the Court Clerk on or before twenty-one (21) calendar days before the date of the Fairness Hearing, comply with the requirements of Paragraph 12 below, and are served on the Parties at the following addresses:

*For Filing with the Court:*

> Clerk of the U.S. District Court for the Western District of Oklahoma
> William J. Holloway, Jr. United States Courthouse
> 200 NW 4th Street
> Oklahoma City, OK 73102
> Re: *Christopher Snider v. Administrative Committee, Seventy Seven Energy Inc. Retirement & Savings Plan, et al.*, Case No. CIV-20-977-D, in the United States District Court for the Western District of Oklahoma

*To Class Counsel:*

> BAILEY & GLASSER LLP
> Gregory Y. Porter
> Mark G. Boyko
> 1054 31st Street NW, Suite 230
> Washington, D.C. 20007
> Telephone: (202) 463-2101
> Facsimile: (202) 463-2103
> gporter@baileyglasser.com
> mboyko@baileyglasser.com

*To Counsel for Defendants:*

> BAKER BOTTS L.L.P.
> Travis J. Sales
> Tina Q. Nguyen
> 910 Louisiana Street
> Houston, Texas 77002-4995
> Telephone: (713) 229-1234

Facsimile: (713) 229-1522
travis.sales@bakerbotts.com
tina.nguyen@bakerbotts.com

12.     The Court will consider written comments and objections to the Settlement that are timely filed with the Court and include all of the following: (a) the name and case number of the Action (*Christopher Snider v. Administrative Committee, Seventy Seven Energy Inc. Retirement & Savings Plan, et al.*, Case No. CIV-20-977-D, in the United States District Court for the Western District of Oklahoma); (b) the objector's full name, address, and telephone number; (c) whether the objector is a Settlement Class member and an explanation of the basis upon which the objector claims to be a Settlement Class member; (d) all grounds for the objection, accompanied by any legal support known to the objector or his or her counsel; (e) a statement as to whether the objector or his or her counsel intends to personally appear and/or testify at the Fairness Hearing; (f) a list of any persons the objector or his or her counsel may call to testify at the Fairness Hearing in support of the objection; and (g) the signature of the objector or the signature of a duly authorized attorney or other duly authorized representative for the objector.  **Any member of the Settlement Class or other person who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred absent an Order from the Court.**

13.     **Appearance at Fairness Hearing**: Anyone who files and serves a timely, written comment or objection in accordance with this Order may also appear at the Fairness Hearing either in person or through qualified counsel retained at their own

expense.  Those persons or their attorneys intending to appear at the Fairness Hearing must effect service of a notice of intention to appear setting forth, among other things, the name, address, and telephone number of the Settlement Class member (and, if applicable, the name, address, and telephone number of that Settlement Class member's attorney) on Class Counsel and Defendants' counsel (at the addresses set out above) and file it with the Court Clerk by no later than twenty-one (21) calendar days prior to the date of the Fairness Hearing.  **Anyone who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except by Order of the Court for good cause shown.   Any comment or objection that is timely filed will be considered by the Court even in the absence of a personal appearance by the Settlement Class member or that Settlement Class member's counsel.**

14.    **Report of Independent Fiduciary**: The Court hereby approves the selection of Fiduciary Counselors Inc. as the Independent Fiduciary.  The report of any Independent Fiduciary retained to review the Settlement shall be filed with the Court at least thirty (30) calendar days prior to the date of the Fairness Hearing.

15.    **Papers in Support of Settlement, Plan of Allocation, Attorneys' Fees and Expenses, and a Case Contribution Award**: Class Counsel shall submit their papers in support of final approval of the Settlement, the proposed Plan of Allocation, and Plaintiff's Counsel's applications for attorneys' fees, expenses, costs, and a Case Contribution Award at least forty-five (45) calendar days prior to the date of the Fairness Hearing.  Within five (5) calendar days of such filing, Class Counsel shall post such filing

on the Settlement Website.  The Parties may submit papers in response to any timely-filed objections and/or to the report of the Independent Fiduciary by no later than ten (10) calendar days prior to the Fairness Hearing.

16. **Service of Papers**: Defendants' counsel and Class Counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

17. **Termination of Settlement**: This Order shall become null and void, *ab initio*, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions as of February 1, 2022 before the Parties executed the Settlement Agreement, if the Settlement is terminated in accordance with the terms of the Settlement Agreement.

18. **Use of Order**: This Order is not admissible as evidence for any purpose against Defendants in any pending or future litigation involving any of the Parties.  This Order shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability, and Defendants specifically deny any such fault, breach, liability, or wrongdoing.  This Order shall not be construed or used as an admission, concession, or declaration by or against Plaintiff or the Settlement Class that their claims lack merit or that the relief requested in the Action is inappropriate, improper, or unavailable.  This Order shall not be construed or used as an admission, concession, declaration, or waiver by any party of any arguments, defenses, or claims he, she, or it may have, including, but not limited to, any objections by Defendants to class certification, in the event that the Settlement Agreement is terminated.  Moreover, the Settlement Agreement and any proceedings taken pursuant to the

Settlement Agreement are for settlement purposes only. Neither the fact of, nor any provision contained in the Settlement Agreement or its exhibits, nor any actions taken thereunder shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity of any defense that has been, could have been, or in the future might be asserted.

19.     **Jurisdiction**: The Court hereby retains jurisdiction for purposes of implementing the Settlement, and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement as may from time to time be appropriate, and to resolve any and all disputes arising thereunder.

20.     **Continuance of Hearing**: The Court reserves the right to continue the Fairness Hearing without further written notice.


SO ORDERED this _____ day of _____, 2022.


_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1.A.

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

## PLEASE READ THIS NOTICE CAREFULLY AS IT MAY AFFECT YOUR RIGHTS

You are receiving this notice (the "Notice") because our records indicate that you have been a participant in a 401(k) Plan involved in this lawsuit and invested some or all of your Plan account in Chesapeake Energy Corporation stock ("Chesapeake Stock"). As such, your rights may be affected by a proposed settlement of the class action litigation in the U.S. Federal Court for the Western District of Oklahoma titled *Christopher Snider v. Administrative Committee, Seventy Seven Energy Inc. Retirement & Savings Plan, et al.*, Case No. CIV-20-977-D, in the United States District Court for the Western District of Oklahoma (the "Action"). The plans involved in the Action are the Seventy Seven Energy Inc. Retirement & Savings Plan, Seventy Seven Energy LLC Retirement & Savings Plan, and the Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan (collectively, the "Plan").

This Notice summarizes the proposed Settlement. Capitalized terms not defined in this Notice are defined in the Settlement Agreement. The complete terms and conditions of the Settlement are described in the Settlement Agreement, which is available at http://www.seventysevensettlement.com, by contacting Class Counsel, Mark G. Boyko at mboyko@baileyglasser.com, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.okwd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Western District of Oklahoma, during public service hours, provided the office is not closed to the public.

## DO NOT CONTACT THE COURT, THE COURT CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL TO INQUIRE ABOUT THIS SETTLEMENT.

## <u>What This Litigation Is About</u>

This class action litigation is brought on behalf of participants in the Plan. Plaintiff Christopher Snider is the named plaintiff and the representative on behalf of all members of the Settlement Class in the Action. The lawsuit was originally filed on September 28, 2020. The Settlement Class is generally defined as all participants in the Plan at any time during the period from July 1, 2014 to February 28, 2021 and whose accounts included any investment in Chesapeake Stock at any time during such period.

1

The lawsuit alleges that Defendants[1] violated their fiduciary duties by continuing to offer the Chesapeake Stock in the Plan after it received Chesapeake Stock as the product of Chesapeake Energy Corporation spinning off Seventy Seven Energy Inc. in 2014. Plaintiff alleges that Chesapeake Stock is undiversified and imprudent and that the Plan's investment in Chesapeake Stock renders the Plan imprudently undiversified as well. Plaintiff alleges that the fiduciary duty of prudence and duty to diversify plan investments, as required by the Employee Retirement Income Security Act of 1974 ("ERISA"), were therefore violated.

Defendants deny all allegations of wrongdoing, fault, liability, or damages to Plaintiff and the Settlement Class and deny that they engaged in any wrongdoing or violation of law or breach of fiduciary duties. Defendants maintain that they acted in the best interests of Plan participants at all times and complied with their fiduciary obligations to the Plan and its participants. Among other things, Defendants contend that the Plan fiduciaries employed a robust and thorough process for selecting, monitoring, and removing Plan investment options, informed Plan participants of the risk of investing in Chesapeake Stock, did not allow new investments in Chesapeake Stock after the Plan was established, and allowed Plan participants the ability to choose for themselves whether to continue to invest their Plan accounts in Chesapeake Stock.

## The Terms of the Settlement

To avoid the time and expense of further litigation, Plaintiff and Defendants have agreed to resolve the litigation. The Settlement is the product of extensive negotiations between the parties, who were assisted in their negotiations by a neutral private mediator. The parties have taken into account the uncertainty and risks of litigation and have concluded that it is desirable to settle on the terms and conditions set forth in the Settlement Agreement. If the Settlement is approved by the Court, the Settlement Class will obtain the benefits of the Settlement without the further delay and uncertainty of additional litigation. The Settlement resolves all issues regarding the Plan's inclusion of Chesapeake Stock.

The terms of the Settlement are set forth in the Class Action Settlement Agreement dated April 18, 2022 (the "Settlement Agreement"), which is available on the Settlement Website at http://www.seventysevensettlement.com. Those terms are summarized below. This Notice is a summary, and in the event of any inconsistency, the Settlement Agreement controls. Nothing in the Settlement Agreement is an admission or concession on Defendants' part of any fault or liability, nor is it an admission or concession on Plaintiff's part that his claims lacked merit.

---

[1]     Collectively, the Administrative Committee of the Seventy Seven Energy Inc. Retirement and Savings Plan, Cary Baetz, Karl Blanchard, Christin Borden, Linda Clark, Clint Cover, Gina DeMarco, Lance Haffner, and Jerome Loughridge.

1.     <u>**Who Is Covered by the Settlement?**</u>

<u>**Plaintiff will request that the Court certify a class, and the Settlement will apply to, and be binding on, that class. The Settlement Class is defined as:**</u>

> All persons, except Defendants and their Immediate Family Members, who were or are participants in or beneficiaries of the Plan (including the Patterson Plan[2]) at any time during the Class Period (July 1, 2014 to February 28, 2021) and whose accounts included any investment in Chesapeake Stock at any time during such period.

Plan records indicate that you may be a member of the Settlement Class because you are a current or former participant in the Plan who invested in Chesapeake Stock at some time during the Class Period.

2.     <u>**Relief Provided to the Settlement Class by the Settlement.**</u>

<u>**Under the proposed Settlement, Defendants will arrange for $15,000,000 to be paid into a Settlement Fund. After payment of Settlement Expenses (such as the cost of distributing this Notice), Class Counsel's attorneys' fees and costs, and other expenses, the remaining Settlement Proceeds will be paid to the Settlement Class.**</u>

The Settlement Proceeds will be distributed to eligible Settlement Class members pursuant to a Plan of Allocation to be approved by the Court.[3]  Individual payments under the Settlement for each Settlement Class member will be determined in accordance with that Plan of Allocation and cannot be quantified with certainty for any individual Settlement Class member at this time. That is in part because the exact Settlement Proceeds amount and number of Settlement Class members are not known at this time, although a preliminary review of Plan records suggests that approximately 4,000 individuals will be included in the Settlement Class. The proposed Plan of Allocation and other case and settlement documents are available at http://www.seventysevensettlement.com.

On a summary level, the Plan of Allocation will work as follows: The Settlement Administrator will determine the Settlement Proceeds to be allocated to Settlement Class members. The Settlement Administrator will then calculate the portion of the Settlement Proceeds to be allocated to each Settlement Class member, utilizing available Plan records, based on the harm each Settlement Class member allegedly suffered and the relative strength of the Plan's claim during the time each Settlement Class member invested in

---

[2]     The Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan.

[3]     The Settlement Proceeds are the balance of the Settlement Fund after satisfaction of attorneys' fees, costs, and expenses pursuant to Section 10.1 of the Settlement Agreement, Case Contribution Award pursuant to Section 10.2 of the Settlement Agreement, and any other Settlement Expenses pursuant to Section 8.1 of the Settlement Agreement.

Chesapeake Stock. To do so, each Settlement Class member will have their "Net Proportion" of the Settlement calculated using the formula "Net Proportion" = (Class Member's proportion of Plan's CHK investment on 7/1/2014) * 0.3 + (Class Member's proportion of Plan's CHK investment on 12/31/2014) * 0.4 + (Class Member's proportion of the Plan's CHK investment on 12/31/2015) * 0.1 + (Class Member's proportion of the Plan's CHK investment on 12/28/2017) * 0.2.

Thus, a Settlement Class member's allocation will depend on the amount he or she had invested in Chesapeake Stock at the start of the Class Period and whether and when the Settlement Class member divested their account of Chesapeake Stock before it was removed from the Plan. To ensure that no Settlement Class member receives less than $10, any Settlement Class member entitled to receive less than $10 will be allocated $10, and the remaining allocations will be adjusted proportionally. If enough assets remain in the Settlement Fund following the initial distribution, a subsequent distribution may be made pursuant to the Plan of Allocation.

Settlement benefits will be distributed by check to the address provided to the Settlement Administrator (generally, the address where this notice has been mailed). The distribution may be treated for tax purposes like a distribution from your 401(k) and, therefore, your distribution may be subject to withholdings as provided for by law. Some or all of these withholdings can be avoided by directing that the distribution be made into another qualified retirement account, like an IRA. If you would like to do that, or if you need to change your address, a form is provided on the settlement website, http://www.seventysevensettlement.com. You do not need to fill out a form to receive your benefits, but it is an optional form which you should use if you would like your distribution to be directly rolled into a tax qualified account.

Your distribution will be automatically mailed to you personally at this address unless you request a direct rollover or a change-of-address through the settlement website, http://www.seventysevensettlement.com. If you do nothing, you will still receive your distribution as a check personally to you.

**Actual allocation amounts will depend on the final Settlement Proceeds, the final number of Settlement Class members, and the individual Settlement Class member's Chesapeake Stock investment during the Class Period. It is possible that some Settlement Class members may receive the minimum recovery of $10.**

All inquiries related to distributions should be addressed solely to the Settlement Administrator at the contact information provided below.

[CONTACT INFORMATION]

3.    <u>Summary of the Claims Released by the Class</u>. In exchange for the Settlement Amount and other terms of the Settlement, if the Settlement is approved, all

members of the Settlement Class will release the "Released Claims," which are defined in the Settlement Agreement as any and all past, present, and future claims, demands, rights, liabilities, causes of action, damages, costs, expenses, and compensation of every nature or description whatsoever, fixed or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated, now existing or that might arise hereafter, at law or in equity, matured or unmatured, whether class or individual in nature, asserted or that might or could have been asserted in any forum by Releasing Parties against any or all of the Released Parties that: (a) were brought or could have been brought in the Action and arise out of the same or substantially similar facts, circumstances, situations, transactions, or occurrences as those alleged in the Action; or (b) were brought or could have been brought under ERISA with respect to Chesapeake Stock in the Plan (including the Patterson Plan).

Settlement Class members will not have the right to bring any Released Claims against the Defendants or other Released Parties. "Released Parties" is defined in the Settlement Agreement and means each and all of Defendants, the Company, the Plan's (including the Patterson Plan's) trustees, fiduciaries, and committee members, and each of their respective past, present, and future directors, officers, fiduciaries, participants, beneficiaries, employees, employers, partners, principals, agents, members, managers, independent contractors, Representatives, underwriters, issuers, insurers, co-insurers, insureds, reinsurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, investment managers, fiduciaries, committee members, personal representatives, predecessors, service providers, Successor-in-Interest, parents, subsidiaries, divisions, affiliates, assigns, heirs, executors, administrators, associates, related or affiliated persons or entities, Immediate Family Members, all other persons and firms for whom they could be legally responsible, and anyone else who could be deemed a fiduciary of the Plan (including the Patterson Plan).

The entire release is set forth in the Settlement Agreement, which can be viewed online at http://www.seventysevensettlement.com, or requested from the Settlement Administrator or Class Counsel.

## <u>The Settlement Approval Process</u>

The Court has granted preliminary approval of the proposed Settlement and approved this Notice. The Settlement will not take effect, and there will be no benefits distributed under the Settlement, however, if the Court does not enter an Order and Final Judgment or the Settlement otherwise does not become effective. The Court will hold a hearing on _____ to consider whether the Settlement is fair, reasonable, and adequate (the "Final Approval Hearing"). The Court and the Parties anticipate the hearing will be conducted in at the United States District Court for the Western District of Oklahoma, 200 NW 4th St., Oklahoma City, OK 73102, but the Court may, by order filed on the public record, change the format, time, or place of the hearing. Class Counsel will

attend the hearing to answer any questions the Court may have. You are not required to attend the Final Approval Hearing.

The date, format, and location of the Final Approval Hearing are subject to change by order of the Court without further notice to the Settlement Class. If you would like to attend the Final Approval Hearing, you should check the Settlement Website, http://www.seventysevensettlement.com, or the Court's online docket to confirm that the date, format, or location has not been changed. Prior to the Final Approval Hearing, an Independent Fiduciary will be asked to approve the Settlement and Released Claims on behalf of the Plan, as may be required by ERISA Prohibited Transaction Exemption 2003-39 or any other applicable class or statutory exemptions. The Court will be informed as to whether the Independent Fiduciary approved the Settlement and Released Claims on behalf of the Plan prior to ruling on the application for final approval of the Settlement.

## The Opportunity to Object to the Settlement

As a Settlement Class member, you can ask the Court to deny approval of the Settlement by filing an objection. You cannot, however, ask the Court to order a settlement on different terms; the Court can approve or reject the Settlement only on the terms reached by the Parties. If the Court denies approval, the Settlement Amount will not be distributed and the litigation will resume.

Any objection to the proposed Settlement must be made in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must be (i) served upon Class Counsel and counsel for Defendants, and (ii) submitted to the Court either by mailing to the Clerk of the Court, United States District Court for the Western District of Oklahoma, 200 NW 4th St., Oklahoma City, OK 73102, or by filing in person at the same location. The objection must be filed (actually received by the Court) on or before [DATE]. Each objection must contain (a) the name and case number of the Action (*Christopher Snider v. Administrative Committee, Seventy Seven Energy Inc. Retirement & Savings Plan, et al.*, Case No. CIV-20-977-D, in the United States District Court for the Western District of Oklahoma); (b) the objector's full name, address, and telephone number; (c) whether a statement that the objector is a Settlement Class member and an explanation of the basis upon which the objector claims to be a Settlement Class member; (d) all grounds for the objection, accompanied by any legal support known to the objector or his or her counsel; (e) a statement as to whether the objector or his or her counsel intends to personally appear and/or testify at the Final Approval Hearing; (f) a list of any persons the objector or his or her counsel may call to testify at the Final Approval Hearing in support of the objection; and (g) the signature of the objector or the signature of a duly authorized attorney or other duly authorized representative for the objector.  **Any member of the Settlement Class or other person**

**who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred absent an Order from the Court.**

Those Settlement Class members or their attorneys intending to appear at the Final Approval Hearing must give notice of their intention to appear setting forth, among other things, the name, address, and telephone number of the Settlement Class member (and, if applicable, the name, address, and telephone number of that Settlement Class member's attorney) to Class Counsel and Defendants' Counsel and file it with the Court Clerk on or before [DATE]. **Anyone who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except by Order of the Court for good cause shown. Any comment or objection that is timely filed will be considered by the Court even in the absence of a personal appearance by the Settlement Class member or that Settlement Class member's counsel.**

If the Court approves the Settlement, you will be bound by it and will receive whatever benefits you are entitled to under its terms. You cannot exclude yourself (or "opt-out") from the Settlement. The Court has conditionally certified the Settlement Class under Federal Rule of Civil Procedure 23(b)(1), which does not permit Settlement Class members to opt out of the Class.

### Attorneys' Fees and Case Contribution Award for Named Plaintiff

The Class is represented by Class Counsel, which may be contacted as follows:

Gregory Y. Porter
Mark G. Boyko
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
mboyko@baileyglasser.com
314-863-5446

Class Counsel and Plaintiff have devoted many hours to investigating the claims, bringing this litigation, and pursuing it for three years. The case presents a legal theory concerning the duty to diversify investments in company stock of a former employer which was untested and, therefore, involves an unusually high level of risk for Class Counsel. During the case, Class Counsel incurred litigation expenses in addition to the time spent by attorneys, paralegals, and others. Class Counsel also took the risk of litigation and have

not been paid for their time and expenses while this litigation has been pending before the Court.

Class Counsel will file a motion with the Court seeking approval of reasonable attorneys' fees and reimbursement of the expenses they incurred in prosecuting the litigation, to be paid from the Settlement Fund. Their request will not exceed (1) attorneys' fees of one-third of the Settlement Amount, or $5,000,000, and (2) reimbursement of expenses of up to $240,000.

Plaintiff will also request that the Court approve a Case Contribution Award of up to $20,000 for Plaintiff Snider from the Settlement Fund.

Plaintiff's preliminary approval motion and supporting papers were filed on XXXXX, and the final approval motion and fee and expense motion will be filed on or before [DATE]. You may review these filings at http://www.seventysevensettlement.com. Any award of attorneys' fees, costs, and expenses and Case Contribution Award approved by the Court, in addition to the administration costs, Independent Fiduciary fees and costs, and taxes and tax-related costs, will be paid from the Settlement Fund.

### **Getting More Information**

> **You do not need to do anything to be a part of this Settlement Class or, if the Settlement is approved, to be eligible to receive your share of the Settlement Fund. If you are eligible for a distribution, a check will be mailed to you.**

You can visit the Settlement Website at http://www.seventysevensettlement.com, where you will find the full Settlement Agreement, the Court's order granting preliminary approval, this Notice, and other relevant documents. If there are any changes to the deadlines identified in this Notice, the date of the Final Approval Hearing, or the Settlement Agreement, those changes will be posted to the Settlement Website. You will not receive an additional mailed notice with those changes, unless separately ordered by the Court. If you cannot find the information you need on the Settlement Website, you may also contact **1-800-xxx-xxxx** for more information. Please do not contact the Court, Defendants, or counsel for Defendants to get additional information.


Dated: _____, 2022                    By Order of the United States District Court

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER SNIDER, on behalf of the Seventy Seven Energy Inc. Retirement & Savings Plan and a class of similarly situated participants of the Plan,<br><br>Plaintiff,<br><br>v.<br><br>ADMINISTRATIVE COMMITTEE, SEVENTY SEVEN ENERGY INC. RETIREMENT & SAVINGS PLAN; et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-20-977-D |

## [PROPOSED] ORDER AND FINAL JUDGMENT

On _____, 2022, this Court held a hearing to determine, among other things: (1) whether the terms and conditions of the Class Action Settlement Agreement, dated April 18, 2022, are fair, reasonable, and adequate and should be approved; (2) whether to certify this case as a class action for settlement purposes only; (3) whether final judgment should be entered dismissing the above-referenced Action against Defendants with prejudice; (4) whether to approve the proposed Plan of Allocation as a fair and equitable method to allocate the Settlement Fund among all Settlement Class members; (5) whether and in what amount to award Plaintiff's Counsel attorneys' fees, costs, and expenses; and (6) whether and in what amount to award Plaintiff a Case

1

Contribution Award in recognition of the time and effort he contributed while representing the members of the Settlement Class.[1]

The Court having considered all matters submitted to it at the hearing and otherwise, and it appearing that the Class Notice of the Fairness Hearing, substantially in the form approved by the Court, was mailed to all persons reasonably identifiable as Settlement Class members and posted on the dedicated settlement website accessible to the public; and the Court having considered and determined the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, whether the Settlement Class should be certified, and the fairness and reasonableness of the award of attorneys' fees, costs, and expenses requested as well as the requested Case Contribution Award; the Court enters this Order and Final Judgment on the terms set out below.

It is hereby ORDERED, ADJUDGED, AND DECREED:

1.     The Court has jurisdiction over the subject matter of the Action and Settlement Agreement and over all Parties to it, including all members of the Settlement Class, the Releasing Parties, and the Released Parties.

2.     The Court finds for the purposes of the Settlement only that the prerequisites for certification of this Action as a class action under Fed. R. Civ. P. 23(a) and (b)(1) have been satisfied in that in this Action: (a) the number of Settlement Class members herein is sufficiently numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the members of the

---

[1] Capitalized terms not otherwise defined in this Order shall have the same meaning as ascribed to them in the Settlement Agreement.

Settlement Class herein; (c) the claims of Plaintiff are typical of the claims of the Settlement Class sought to be represented; (d) Plaintiff has fairly and adequately represented, and will fairly and adequately represent, the interests of the Settlement Class herein. The Court also finds for purposes of the Settlement only, as required by Fed. R. Civ. P. 23(b)(1), that the prosecution of separate actions by individual members of the Settlement Class would create a risk of: (i) inconsistent or varying adjudications as to individual Settlement Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in this Action; or (ii) adjudications as to individual Settlement Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications, or would substantially impair or impede the ability of such persons to protect their interests.

3.      Pursuant to Fed. R. Civ. P.  23 and for purposes of Settlement only, the Court hereby finally certifies this Action as a class action, with the Settlement Class being defined as follows:

> All persons, except Defendants and their Immediate Family Members, who were participants in or beneficiaries of the Seventy Seven Energy Inc. Retirement & Savings Plan, Seventy Seven Energy LLC Retirement & Savings Plan, Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan, and their Successors-in-Interest (collectively, the "Plan") at any time from July 1, 2014 to February 28, 2021, inclusive (the "Class Period"), and whose Plan accounts included any investment in Chesapeake Energy Corporation at any time during such period.

4.      Pursuant to Fed. R. Civ. P. 23 and for the purposes of the Settlement only, the Court appoints Plaintiff Christopher Snider, member of the Settlement Class, as

representative for the Settlement Class and appoints Bailey & Glasser LLP, Izard Kindall & Raabe LLP, and Latham, Wagner, Steele & Lehman as Class Counsel for the Settlement Class.  Class Counsel who seek to represent the Settlement Class in the Action (i) have done appropriate work identifying or investigating potential claims in the action; (ii) are experienced in handling ERISA class actions, (iii) are knowledgeable of the applicable law, and (iv) have committed the necessary resources to represent the Settlement Class.

5.      The Court determines that the Class Notice transmitted to the Settlement Class pursuant to the Preliminary Approval Order concerning the Settlement and the other matters set forth therein are the best notice practicable under the circumstances and, in the form of the Class Notice, included individual notice to all members of the Settlement Class who could be identified through reasonable efforts.  Such Class Notice provided valid, due, and sufficient notice of these proceedings and of the matters set forth therein, including the terms of the Settlement set forth in the Settlement Agreement and the Plan of Allocation, to all persons entitled to such notice, and such Notice has fully satisfied the requirements of Fed. R. Civ. P. 23 and the requirements of due process.

6.      The Court determines that the Settlement Agreement was negotiated vigorously and at arm's-length by Plaintiff and his counsel on behalf of the Plan and the Settlement Class and further finds that, at all times, Plaintiff has acted independently and that his interests are identical to the interests of the Plan and the Settlement Class.  If settlement of Plaintiff's claims had not been achieved, both Plaintiff and Defendants would have faced the expense, risk, and uncertainty of extended litigation.

4

7.      Pursuant to Fed. R. Civ. P. 23(e), the Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as being a fair, reasonable, and adequate Settlement and compromise of the Action and in the best interests of the Settlement Class.  The Court orders that the Settlement Agreement shall be consummated and fully implemented in accordance with its terms and conditions.

8.      The Court hereby finds that the Plan of Allocation provides a fair and equitable basis upon which to allocate the proceeds of the Settlement Fund among the Settlement Class members.  A full and fair opportunity was accorded to all Settlement Class members to be heard with respect to the Plan of Allocation.  Accordingly, the Court hereby approves the Plan of Allocation.

9.      The Action is hereby dismissed with prejudice, each party to bear its own costs, except as provided herein.

10.      The Court having certified the Action as a non-opt-out class action under Fed. R. Civ. P. 23(a) and 23(b)(1), Settlement Class members shall be bound by the Settlement.

11.      Upon the Effective Date of the Settlement, the Releasing Parties absolutely and unconditionally **RELEASE AND FOREVER DISCHARGE** the Released Parties from the Released Claims.  Upon the Effective Date of the Settlement, the Plan and the Plan's participants who are members of the Settlement Class, by operation of this Order, absolutely and unconditionally **RELEASE AND FOREVER DISCHARGE** each and all of the Released Parties from the Released Claims.

5

12.     Upon the Effective Date of the Settlement, the Releasing Parties are permanently **ENJOINED AND BARRED** from commencing or prosecuting any action asserting any of the Released Claims against any of the Released Parties.

13.     Nothing herein, however, is intended to include a release of any rights or duties arising directly out of the Settlement Agreement, including the express warranties and covenants contained therein. The Parties intend the Settlement to be a **FINAL AND COMPLETE** resolution of all disputes asserted or which could have been asserted by the Releasing Parties against the Released Parties with respect to the Released Claims.  Except as expressly set forth in the Settlement Agreement and this Order, each party shall bear his, her, or its own costs and expenses, including attorneys' fees.

14.     Other than Defendants' insurers' obligation to fund the Class Settlement Amount in accordance with Section 2.5 of the Settlement Agreement, Defendants and the Released Parties shall have no responsibility for the Settlement Fund or the Settlement Fund Account.  Defendants and Released Parties shall not be liable for claims relating to any act or omission of Plaintiff's Counsel, the Settlement Administrator, or the Escrow Agent relating to the Settlement Fund or Settlement Fund Account, or any loss of funds in the Settlement Fund Account.  Further, Defendants and Released Parties shall have no responsibility for the allocation and distribution of the Settlement Fund and shall not be liable for any claims by, through, or under any member of the Settlement Class or any third party relating to the allocation or distribution of the Settlement Fund or Settlement Proceeds, including but not limited to any claims regarding the adequacy of payment or failure to make payment or that a member of the Settlement Class should have

been allocated or distributed a different amount of the Settlement Fund than it actually received or than provided by the Settlement, including the Plan of Allocation.

15.    If any Person is paid a portion of the Settlement Proceeds which he or she was not entitled to receive, and some other Person asserts a claim against any of the Released Parties for payment of all or a portion of those Settlement Proceeds, then the Person who received those Settlement Proceeds shall be liable for any payment to the Person who is determined to have been properly owed that amount.  Defendants and Released Parties shall have no responsibility for making any additional payments under the Settlement Agreement, as provided in Section 7.2 thereof.  The Releases, Covenants Not to Sue, and Dismissal shall be effective, regardless of whether or not particular members of the Settlement Class did or did not receive payment from the Settlement Proceeds and regardless of whether or not any Person who was obligated to pay some or all of the distributed funds to another Person in fact made such payment to such other Person.  The failure of a Settlement Class member to receive a payment from the Settlement Proceeds, or the failure of a Person to make payment to another Person, shall not be a defense to the enforcement of the Releases, Covenants Not to Sue, and Dismissal.

16.    In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement, the Final Order shall be rendered null and void and shall be vacated, and the Action shall proceed in the manner provided in the Settlement Agreement and the Preliminary Approval Order.

17.    The Settlement Agreement and this Final Order, whether or not consummated, do not and shall not be construed, argued, or deemed in any way to be (a) an

admission or concession by Defendants with respect to any of the Released Claims or evidence of any violation of any statute or law or other wrongdoing, fault, or liability by Defendants, or (b) an admission or concession by Plaintiff or any member of the Settlement Class that their claims lack merit or that the defenses that have been or may have been asserted by Defendants have merit.  Absent written agreement of the Parties, in the event this Order and Final Judgment approving the Settlement is reversed, vacated, or modified in any respect by the Court or any other court, the certification of the Settlement Class shall be vacated, the Action shall proceed as though the Settlement Class had never been certified, and no reference to the prior Settlement Class or any documents related thereto shall be made for any purpose.  Nothing herein shall be deemed to preclude Defendants from contesting class certification for any other purpose if the Settlement is reversed, vacated, or modified in any respect by the Court or any other court.

18.     The Settlement Agreement and the Final Order shall not be offered or received in evidence by any Settlement Class member or Party to this Action in any civil or administrative action or proceeding other than proceedings necessary to approve or enforce the terms of the Settlement Agreement and this Order and Final Judgment.

19.     Class Representative Christopher Snider is awarded $20,000 as a Case Contribution Award, as defined in the Settlement Agreement, in recognition of his contributions to this Action, to be paid from the Settlement Fund in accordance with the Settlement Agreement.

20.     The attorneys' fees sought by Plaintiff's Counsel are fair and reasonable in light of the successful results achieved by Plaintiff's Counsel, the monetary

benefits obtained in this Action, the substantial risks associated with the Action, Plaintiff's Counsel's skill and experience in class action litigation of this type, and the fee awards in comparable cases. Accordingly, attorneys' fees are awarded in the amount of _____% of the gross Settlement Fund to be paid in accordance with the Settlement Agreement.

21.    The litigation costs and expenses incurred by Plaintiff's Counsel in the course of prosecuting this action are fair and reasonable. Accordingly, costs and expenses are awarded in the amount of $_____, to be paid from the Settlement Fund in accordance with the Settlement Agreement.

22.    As required by Fed. R. Civ. P. 23(h)(3), the Court has considered and finds as follows in making this award of attorneys' fees, costs, and expenses:

    a.  The Settlement created a gross Settlement Fund of $15 million in cash, plus interest earned after deposit, for distribution to the Plan, and numerous Settlement Class members will benefit from the Settlement pursuant to the Plan of Allocation;

    b.  More than _____ copies of the Class Notice were sent to putative Settlement Class members notifying them that Plaintiff's Counsel would be applying to the Court for up to one-third of the gross Settlement Fund in attorneys' fees and approximately $ _____ in costs and expenses;

    c.  The Class Notice advised Settlement Class members that more information would be made available on the Settlement Website. Pursuant to the Preliminary Approval Order, Plaintiff's Counsel's

9

filing in support of final approval of the Settlement, the proposed Plan of Allocation, and the applications for attorneys' fees, costs, expenses, and a Case Contribution Award was posted to the Settlement Website;

d. Any objections filed against the terms of the Settlement or the proposed Plan of Allocation are denied;

e. The Action involved complex factual and legal issues, was actively prosecuted and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

f. Had Plaintiff's Counsel not achieved the Settlement there would remain a significant risk that Plaintiff and the class he sought to represent would recover less or nothing from the Defendants;

g. Plaintiff's Counsel's fee and expense application indicates that they devoted over _____ hours, with a lodestar value of approximately $_____, to achieve the Settlement; and

h. The amount of attorneys' fees, costs, and expenses awarded by the Court is fair and reasonable and consistent with such awards in similar cases.

23. The Court finds the fees, costs, and expenses incurred by the Settlement Administrator to be just and proper and hereby orders the Settlement Administrator to be paid in conformity with the Settlement Agreement.

10

24.     Without affecting the finality of this Order and Final Judgment, the Court retains jurisdiction for purposes of implementing the Settlement Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement Agreement and the Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

SO ORDERED this _____day of _____, 2022.


_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTOPHER SNIDER, on behalf of the )
Seventy Seven Energy Inc. Retirement & )
Savings Plan and a class of similarly )
situated participants of the Plan, )
           )
            Plaintiff, )
           )
v. )           Case No. CIV-20-977-D
           )
ADMINISTRATIVE COMMITTEE, )
SEVENTY SEVEN ENERGY INC. )
RETIREMENT & SAVINGS PLAN; et al. )
           )
           Defendants.

## [PROPOSED] PLAN OF ALLOCATION

1.      This Plan of Allocation shall provide for the determination, calculation, and distribution of the Settlement Proceeds to the members of the Settlement Class ("Class Members"). The intent of this Plan of Allocation is to distribute the Settlement Proceeds to the Class Members in a fair, equitable, and reasonable manner, based on a good-faith determination of each Class Member's portion of the Settlement Proceeds. Capitalized terms not otherwise defined in this Plan of Allocation shall have the same meaning as ascribed to them in Class Action Settlement Agreement, dated April 18, 2022 ("Settlement Agreement"). The provisions herein shall be interpreted consistent with, in light of, and to give effect to the intent of the Settlement Agreement.

2.      <u>Distributable Amount.</u> The Settlement Administrator shall obtain, in writing, an agreement with Class Counsel and the Settlement Administrator on the Distributable Amount, which shall be determined by (1) the balance of the Settlement Fund minus (2) deductions for (i) attorneys' fees, costs, and expenses awarded by the Court, (ii) Case Contribution Award awarded by the Court, and (iii) an agreed-upon amount for anticipated and unanticipated Settlement Expenses ("Distributable Amount").

3.    <u>Class Member's Net Proportion.</u> The Settlement Administrator shall determine each Class Member's Net Proportion in accordance with the following formula:

"Net Proportion" =

(Class Member's proportion of Plan's CHK investment on 7/1/2014) * 0.3 +
(Class Member's proportion of Plan's CHK investment on 12/31/2014) * 0.4 +
(Class Member's proportion of the Plan's CHK investment on 12/31/2015) * 0.1 +
(Class Member's proportion of the Plan's CHK investment on 12/28/2017) * 0.2.

4.    <u>First Distribution.</u>

a.    The Settlement Administrator shall calculate the First Distribution to Class Members as follows:

      i.    Calculate each Class Member's share of the Distributable Amount by multiplying (1) the Class Member's Net Proportion and (2) the Distributable Amount.

      ii.    Increase any Class Member's share of the Distributable Amount to $10.00, so that each Class Member will receive at least $10.00 for the First Distribution. The Distributable Amount will be re-allocated until all Class Member's awards are $10.00 or more. This modified award shall be known as the Class Member's Entitlement Amount and used for purposes of the First Distribution, subject to Section 7 below.

      iii.    For Class Members with multiple account names, each account will be calculated separately, and each entitled to an increase to $10.00 if appropriate.

b.    The Settlement Administrator will make diligent effort to mail the First Distribution within sixty (60) calendar days of the Effective Date. It is contemplated that distributions may be made in waves, where using that approach is more efficient for the Settlement Administrator, so that payments are not unduly delayed.

c.    Class Members will be paid by check but will have the option to elect via the Settlement Website for the check to be payable into a qualified retirement account, which shall be handled by the Settlement Administrator. Checks will expire one-hundred twenty (120) calendar days after issuance, after which the checks shall be void and the Settlement Administrator shall be instructed to return any such funds to the Settlement Fund.

d.      Notwithstanding these requirements, the Settlement Administrator shall have the authority to reissue checks to Class Members where it determines there is good cause to do so, provided that doing so will not compromise the Settlement Administrator's ability to implement the Plan of Allocation ("Reissued Checks"). Reissued Checks shall expire in ninety (90) calendar days. The voidance of checks shall have no effect on the Class Members' release of claims, obligations, representations, or warranties as provided in the Settlement Agreement, which shall remain in full effect.

5.      <u>Second Distribution, If Applicable.</u>

a.      With ten (10) calendar days of the voidance of all checks mailed in the First Distribution (not the voidance of all Reissued Checks), the Settlement Administrator will calculate a Second Distributable Amount using (1) the balance of the Settlement Fund minus (2) deductions for (i) anticipated future Settlement Expenses and (ii) the sum of all non-voided Reissued Checks ("Second Distributable Amount"). The Settlement Administrator shall obtain, in writing, an agreement with Class Counsel and the Settlement Administrator on the Second Distributable Amount.

b.      If and only if the Second Distributable Amount exceeds $75,000, the Settlement Administrator shall calculate a Second Distribution to Class Members as follows:

i.      Calculate each Class Member's share of the Second Distributable Amount by multiplying (1) the Class Member's Net Proportion and (2) the Second Distributable Amount.

ii.      Increase any Class Member's share of the Second Distributable Amount to $10.00, so that each Class Member will receive at least $10.00 for the Second Distribution. The Second Distributable Amount will be re-allocated until all Class Member's awards are $10.00 or more. This modified award shall be known as the Class Member's Entitlement Amount and used for purposes of the Second Distribution, subject to Section 7 below.

iii.      For Class Members with multiple account names, each account will be calculated separately, and each entitled to an increase to $10.00 if appropriate.

c.      The Settlement Administrator will make diligent effort to mail any Second Distribution within thirty (30) calendar days of the voidance of all checks mailed in the First Distribution (not the voidance of all Reissued Checks). It is contemplated that distributions may be made in waves, where using that approach is more efficient for the Settlement Administrator, so that payments are not unduly delayed.

3

d.      Where a Class Member elected for their First Distribution to be paid into a qualified retirement account, that Class Member's distribution under this Section will also be made into the same account, unless not administratively practicable. Checks mailed pursuant to this Section shall be void after ninety calendar (90) days. The Settlement Administrator may, with the approval of Class Counsel, reissue checks under this Section only if the void date on such checks does not extend beyond the void date of the check originally issued under this Section. The voidance of checks shall have no effect on the Class Members' release of claims, obligations, representations, or warranties as provided in the Settlement Agreement, which shall remain in full effect.

6.      <u>Final Payment.</u> Within thirty (30) calendar days following the voidance of all outstanding checks from the First Distribution and any Second Distribution, the Settlement Fund, following the payment of all outstanding Settlement Expenses, shall be distributed to the Pension Rights Center, as a *cy pres* payment, or, with consent of the Parties at the time of the Final Distribution, one or more alternative entities supporting and/or educating 401(k) savers ( "Final Payment"). Within seven (7) calendar days of this Final Payment, Class Counsel shall notify the Court of the completion of the Plan of Allocation and request that the Court finally close the Action.

7.      <u>Miscellaneous Settlement Administrator Provisions.</u>

a.      The Settlement Administrator shall make all necessary withholdings and reportings, consistent with federal and state tax law and the right of Class Members to roll their distribution into a qualified retirement account. The check expiration date shall be printed on the face of each check.

b.      The Settlement Administrator shall utilize the calculations required to be performed herein for making the required distributions of the Entitlement Amount, less any required tax withholdings or penalties, to each Class Member and do so in a manner that accommodates, where possible, Class Members wishing to deposit their payments in qualified retirement accounts. In the event that the Settlement Administrator determines that the Plan of Allocation would otherwise require payments exceeding the Distributable Amount or the Second Distributable Amount, the Settlement Administrator is authorized to make such changes as are necessary to the Plan of Allocation such that said totals do not exceed the Distributable Amount or the Second Distributable Amount. The Settlement Administrator shall be solely responsible for performing any calculations required by this Plan of Allocation and in compliance with the Settlement Agreement and the orders of the Court.

c.      If the Settlement Administrator concludes that it is impracticable to implement any provision of the Plan of Allocation, it shall be authorized to make such changes to the methodology as are necessary to implement as closely as possible the terms of the Plan of Allocation, so long as the total amount of all un-voided checks to be written

by the Settlement Administrator does not—without written agreement of Class Counsel and Defendant's Counsel—exceed the Distributable Amount or the Second Distributable Amount.

         d.    In no case shall such funds be paid to or for the benefit of the Company or any Defendant.