## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER SNIDER, on behalf of the Seventy Seven Energy Inc. Retirement & Savings Plan and a class of similarly situated participants of the Plan, | ) ) ) ) ) | |
| Plaintiff, | ) | Case No. CIV-20-977-D |
| v. | ) ) | |
| ADMINISTRATIVE COMMITTEE, SEVENTY SEVEN ENERGY, INC. RETIREMENT & SAVINGS PLAN, CARY BAETZ, KARL BLANCHARD, CHRISTIN BORDEN, LINDA CLARK, CLINT CLOVER, GINO DEMARCO, LANCE HAFFNER AND JEROME LOUGHRIDGE. | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................. 3

III.    ERISA FIDUCIARY OBLIGATIONS ................................................... 4

IV.     PROCEDURAL BACKGROUND .......................................................... 5

V.      THE TERMS OF THE SETTLEMENT ................................................. 6

        A.      The Settlement Class ................................................................. 6

        B.      The Plan of Allocation ............................................................... 6

        C.      The Settlement Should Be Approved ......................................... 7

        D.      Identification of Class Members ................................................ 7

        E.      Notice and Administration .......................................................... 7

        F.      Attorneys' Fees and Expenses .................................................... 8

        G.      Case Contribution Award ........................................................... 8

VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ........ 9

VII.    THE COURT SHOULD ENTER AN ORDER OF FINAL APPROVAL
        OF THE SETTLEMENT AND JUDGMENT ......................................... 9

        A.      Standard And Process for Approval .......................................... 10

        B.      The Settlement Should Be Approved ....................................... 11

                1.      The Class Representative and Class Counsel Adequately
                        Represented the Class ..................................................... 11

                2.      The Proposed Settlement Was Negotiated at Arm's Length. .......... 12

                3.      The Relief Provided for The Class Is More Than Adequate ........... 15

                        a.      The Costs, Risks, and Delay of Trial and Appeal ................... 15

b.    The Effectiveness of Distribution to The Settlement Class .. 17

c.    The Terms of Any Proposed Award of
Attorneys' Fees, Including Timing of Payment ................... 21

4.    The Settlement Treats Class Members Equitably Relative
to Each Other ....................................................................... 21

a.    Notice to Class Members Was Adequate ................................. 22

VIII.  OBJECTIONS ......................................................................................... 20

IX.   CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Chiefton Royalty Co. v. Enervest Energy Institutional Fund*,
    888 F.3d 455 (10th Cir. 2017) ..................................................................... 19

*Deem v. Ames True Temper, Inc.*,
    No. 10-01339, 2013 WL 2285972 (S.D. W.Va. May 23, 2013) ................................ 13

*DeJulius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ..................................................................... 19

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982)............................................................................. 4

*Donovan v. Mazzola*,
    716 F.2d 1226 (9th Cir. 1983) ......................................................................... 4

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)......................................................................... 10

*Figas v. Wells Fargo*,
    No. 08–4546 (D. Minn.)............................................................................... 17

*Gould v. Alleco, Inc.*,
    883 F.2d 281 (4th Cir. 1989) ....................................................................... 10

*Great-West Life & Annuity Ins. Co.*, 534 U.S. 204, 209 (2002) ......................................... 4

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ....................................................................... 13

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ............................................................... 10, 15

*Kayes v. Pacific Lumber Co.*,
    51 F.3d 1449 (9th Cir. 1995), *cert. denied* 516 U.S. 914 (1995).................................. 4

*Mass. Mutual Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)....................................................................................... 4

*Mertens v. Hewitt Assoc.*,
    508 U.S. 248 (1993)....................................................................................... 4

*Montgomery v. Continental Intermodal Group-Trucking LLC*,
No. 19–940, 2021 WL 1339305 (D.N.M. Apr. 9, 2021) ...................................... 13, 15

*Nachman Corp. v. Pension Benefit Guar. Corp.*,
446 U.S. 359 (1980) ................................................................................................ 4

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .............................................................................................. 20

*Prince v. Eaton Vance Corp.*,
No. 18–12098, Dkt. 57 (D. Mass Sept. 24, 2019) ......................................... 17

*Ramos v. Banner Health*,
325 F.R.D. 382 (D. Col. 2018) ............................................................................ 9

*Richards-Donald v. Teachers Insurance & Annuity Ass'n of Amer.*,
No. 15–8040 (S.D.N.Y.) ...................................................................................... 17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180, 1188 (10th Cir. 2002) ........................................................... 15

*In re Samsung Top-Load Washing Machine Marketing, Sales Practice and*
*Products Liability Litig.*,
No. 17–2792, 2020 WL 2616711 (W.D. Okla. May 22, 2020) ................ 11, 12, 13, 15

*Sims v. BB&T Corp.*,
No. 15–732, 2019 WL 1993519 (M.D.N.C. May 6, 2019) ......................... 17

*Stanspec Corp. v. Jelco, Inc.*,
464 F.2d 1184 (10th Cir. 1972) ...................................................................... 10

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) ......................................................................... 16

*Tussey v. ABB, Inc.*,
850 F.3d 951 (8th Cir. 2017) ......................................................................... 16

*Tussey v. ABB, Inc.*,
No. 06-4305, Dkt. 869 (W.D. Mo. Aug. 16, 2019) ................................... 16

*United States v. Hardage*,
750 F. Supp. 1460 (W.D. Okla. 1990) ......................................................... 13

*Urakchin v. Allianz Asset Mgmt. of Amer., L.P.*,
No. 15–1614, 2018 WL 8334858 (C.D. Cal. July 30, 2018) ...................... 17

*In re Williams Cos. ERISA Litig.*,
   231 F.R.D. 416 (N.D. Okla. 2005) (Kern, J.) ................................................................ 5

**Statutes**

28 U.S.C. § 1715 ...................................................................................................... 7

29 U.S.C. § 1001 *et seq.* ("ERISA") ......................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23(b)(1) ......................................................................... 6, 9

Fed. R. Civ. P. 23(g) .................................................................................. 20

Fed. R. Civ. P. 23(a) ................................................................................... 9

Fed. R. Civ. P. 23(c)(2) ..................................................................... 19, 20

Fed. R. Civ. P. 23(e) ......................................................................... *passim*

Plaintiff Christopher Snider, individually and on behalf of the Plan[1] and the putative class, moves for the entry of an order and final judgment substantially in the form of the [Proposed] Order and Final Judgment, previously submitted as Exhibit 2 to the Parties' Settlement Agreement, Dkt. 40-2.[2] On May 19, 2022, the Court entered an order preliminarily approving the settlement, preliminarily certifying the settlement class, and ordering the form and manner of notice. Dkt. 41. All the post-preliminary approval notice and other requirements have been satisfied as detailed below. There have been no fact or legal developments affecting preliminary approval or class certification. And to date, there have been no objections. Accordingly, the Court should enter the [Proposed] Order and Final Judgment.

## I.    INTRODUCTION

The proposed Settlement is an excellent result for the Settlement Class,[3] with the Settlement Class receiving $15 million, or 26.5% of the reasonable best-case, class-wide damages calculated by Plaintiff's expert during the litigation. The Settlement is offered to all members of the Settlement Class ("Class Members") without the need to fill out a claim

---

[1] Collectively, the Seventy Seven Energy Inc. Retirement & Savings Plan, which became the Seventy Seven Energy LLC Retirement & Savings Plan and was merged into the Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan.

[2] Defendants are not opposed to the relief requested in this motion, without taking a position on Plaintiff's specific arguments and representations.  As provided in the Settlement Agreement, the Settlement Agreement and these related motions are made in compromise of disputed claims and are not admissions by Defendants of any liability of any kind, whether legal or factual.  Defendants specifically deny any liability or wrongdoing with respect to the claims and damages alleged in this action.

[3] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Settlement Agreement.

form, and Class Members have the option of receiving their distributions as direct rollovers into tax-qualified accounts, further increasing the value of the settlement through tax-preferred treatment.

The Employee Retirement Income Security Act of 1974 ("ERISA") requires fiduciaries to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing" of a prudent fiduciary expert, and to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(B) and (C). This case is about whether Defendants breached their fiduciary duties owed to the Plan and all Class Members who were Plan participants. Plaintiff contends that the Plan's large holding in Chesapeake common stock (referred to hereafter by its ticker symbol, "CHK") exposed the Plan and Class Members to an unnecessary and imprudent risk of large losses, especially taking into consideration the Plan's equally undiversified investment in Seventy Seven Energy, Inc. ("SSE") stock which was in a similar business with similar systemic risks.

The value of the proposed Settlement must be considered in light of the substantial litigation risks in this cutting-edge and complex case. For this reason, and others discussed in more detail below, the Settlement should be finally approved, and Plaintiff requests that the Court grant this motion. All the conditions of the Court's preliminary approval order necessary to final approval have been satisfied: notice was timely sent via first class mail on June 9, 2022 and the Settlement Administrator took all reasonable steps to deliver notice to class members whose initial notice addresses were incorrect; the Settlement

2

Administrator caused a website containing various case and settlement information and documents to become active on June 9, 2022;[4] and contemporaneous to this motion, Plaintiff filed a motion for attorneys' fees. See Declaration of Alex Thomas, on behalf of KCC, Inc., ("Thomas Decl.") at 3–6.

To date, the Parties are not aware of any objections and none have been filed. *See*, Thomas Decl. ¶ 7.

## II.    FACTUAL BACKGROUND

On June 30, 2014, Chesapeake Energy Corporation ("Chesapeake") spun off SSE, and the Plan was established the following day. SSE was the Plan administrator and named fiduciary and Delaware Charter Guarantee & Trust Company, d/b/a Principal Trust Company ("Principal Trust") was the Plan's directed trustee. On July 1, 2014, Chesapeake's 401(k) plan transferred $196,210,229 in assets to the Plan corresponding to the 401(k) accounts of the employees who had been transferred to SSE in the spin-off. Over 44% of the transferred assets, worth $87,038,874, was invested in CHK stock.

Plaintiff filed this proposed class action on September 28, 2020, on behalf of participants in the Plan whose retirement assets were invested in Chesapeake stock. *See* Dkt. 1, generally. As Plaintiff alleged in the Complaint, ERISA requires that a plan's fiduciaries must meet their fiduciary duties by prudently selecting investments, monitoring those investments, and removing imprudent investments. Plaintiff also alleged that Defendants breached their fiduciary duties by failing to evaluate and remove Chesapeake

---

[4] Additionally, Defendants have represented that they sent CAFA notices within the time limits imposed by CAFA.

stock as a plan investment option. Dkt. 1, ¶¶ 29–32. Plaintiff further alleged that due to Defendant's fiduciary breaches, the Plan's participants lost tens of millions of dollars in retirement savings when the share price of CHK stock declined. Dkt. 1, ¶¶2–5.

### III.    ERISA FIDUCIARY OBLIGATIONS

ERISA was adopted in 1974 to encourage private retirement plans to substantially supplement their retirement benefits under the Social Security System. *Great-West Life & Annuity Ins. Co.*, 534 U.S. 204, 209 (2002); *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993); *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361–62 (1980). The duties of an ERISA fiduciary are codified in ERISA § 404(a), 29 U.S.C. § 1104(a), and are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). ERISA § 404(a) requires fiduciaries to discharge their duties with respect to the plan "with the care, skill, prudence, and diligence under the circumstances then prevailing" of a prudent expert, and to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(B) and (C); *see also Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir. 1983) ("[I]n enacting ERISA[,] Congress made more exacting the requirements of the common law of trusts relating to employee benefit trust funds.").

Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), plan participants and beneficiaries can sue for breach of fiduciary duties. Suits under Section 502(a)(2) are brought "in a representative capacity on behalf of the plan as a whole." *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Accordingly, a breach of fiduciary duty claim is automatically representative in nature. *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449,

4

1462 (9th Cir. 1995), *cert. denied* 516 U.S. 914 (1995). Thus, if the Plaintiff prevails in recovering money damages on account of the Defendants' breaches of fiduciary duties, the entire recovery will flow to the Plan, to be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA itself. *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 425 (N.D. Okla. 2005) (Kern, J.).

## IV.    PROCEDURAL BACKGROUND

On September 28, 2020, Plaintiff filed the class action Complaint (Dkt. 1). On December 18, 2020, Defendants moved to dismiss (Dkt. 24), which this Court granted in part and denied in part on October 8, 2021. The Court held that Plaintiff's Complaint adequately stated "claims against Defendants for breaching fiduciary duties under 29 U.S.C. § 1104(a)(1)(B) and (C) to act with prudence and to diversify the Plan's investments but that the Complaint fails to state a separate claim that they breached a duty to monitor the Plan's investments." Dkt. 28 at 18.   The Court entered a scheduling order (the "Scheduling Order") on January 25, 2022. Dkt. 38. Based on the Scheduling Order, the Parties conducted class certification discovery.

The Parties participated in a mediation on February 15, 2022, and Defendants produced additional documents to Plaintiff ahead of that mediation in order to facilitate a productive settlement process. The Parties retained Robert Meyer, a recognized and respected mediator with national experience in ERISA cases generally and cases concerning the selection of 401(k) investment options in particular, as mediator. During the mediation, the Parties moved toward an agreement in principle. Over the weeks that

followed, the Parties negotiated the details of the settlement and reached a Settlement on April 18, 2022.

As part of the Settlement, Plaintiff sought and the Court preliminarily granted class certification for settlement purposes under Fed. R. Civ. P. 23(b)(1), defining the Class as follows:

> All persons, except Defendants and their Immediate Family Members, who were or are participants in or beneficiaries of the Plan (including the Patterson Plan) at any time during the Class Period and whose accounts included any investment in Chesapeake Stock at any time during such period.

The Class Period begins on July 1, 2014, when CHK stock entered the Plan, and ends on February 28, 2021, when Chesapeake's bankruptcy concluded, ending all investment in CHK stock by last plan involved in the case.

## V.     THE TERMS OF THE SETTLEMENT

The full Settlement Agreement was attached as Exhibit A to Plaintiff's Motion for Preliminary Approval. Dkt. 40-2. The material terms of the Agreement are summarized below:

**A.     The Settlement Class**: The Settlement Class is the proposed Settlement Class set forth above.

**B.     Plan of Allocation**: Under the Plan of Allocation, Class Members will automatically receive (without requiring a claim form) a portion of the Settlement Fund based on a formula which considers how much CHK stock the Class Member owned and when, if ever, the Class Member removed some or all of their CHK stock investment from the Plan. Dkt. 40-2 at Ex. A-3.

6

C.    **Release**: The Released Claims cover "any and all past, present, and future claims, demands, rights, liabilities, causes of action, damages, costs, expenses, and compensation of every nature or description whatsoever, fixed or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated, now existing or that might arise hereafter, at law or in equity, matured or unmatured, whether class or individual in nature, asserted or that might or could have been asserted in any forum by Releasing Parties against any or all of the Released Parties that: (a) were brought or could have been brought in the Action and arise out of the same or substantially similar facts, circumstances, situations, transactions, or occurrences as those alleged in the Action; or (b) were brought or could have been brought under ERISA with respect to Chesapeake Stock in the Plan (including the Patterson Plan)."

D.    **Identification of Class Members**: Class Members were identified using the Plan's records.

E.    **Notice and Administration**: Defendants prepared and served the notices required by the Class Action Fairness Act ("CAFA"), as specified by 28 U.S.C. § 1715, on April 27, 2022. Defendants paid the cost and expense associated with providing CAFA notices.

The costs of Settlement Administration to date, to be paid from the Settlement Fund, are estimated to be below $35,000. Boyko Decl. ¶ 14. On June 9, 2022, KCC, Inc., the Settlement Administrator, mailed 4,563 notices, one to each class member. Thomas Decl. at ¶ 3. Of these, 311 notices have been returned to date as undeliverable and KCC is in the process of performing address searches and will remail notices to updated addresses. *Id*. at

¶ 4. Also on June 9, KCC established the settlement website, www.seventysevensettlement.com, which provides additional information about the settlement including the Class Notice, an address change/rollover request form, a Spanish language translation of the Class Notice, and other case-related documents. *Id*. at ¶ 5. To date, the Settlement Website has received 255 visits. Finally, KCC established a 24-hour toll free number class members can call if they need assistance or have questions. *Id*. at ¶ 6. As of July 1, 2022, KCC has received 7 calls to the hotline. *Id*. The phone number and settlement website address are included in the mailed notices. *Id*. at ¶ 5.

      **F.**    **Attorneys' Fees and Expenses**: The Settlement Agreement provides that proposed Class Counsel Izard, Kindall & Raabe, LLP ("IKR"), Bailey & Glasser, LLP ("B&G"), and Latham Steele Lehman[5] will request that this Court award attorneys' fees of up to $5 million, (33.33% of the $15 million Settlement Amount) plus expert and other litigation expenses and costs subject to Court approval, which shall be paid from the Settlement Fund. Settlement Agmt. Section 10.1. The Settlement expressly provides that the Settlement is not conditioned upon the Court approving the requested amounts for fees, expenses or the Case Contribution Award. *Id.* Section 9.1.7. Plaintiff's motion for attorney's fees and expenses has been filed on the same day as the instant motion and will be the subject of a separate order.

      **G.**    **Case Contribution Award**: The Settlement Agreement provides that

---

[5] In the Settlement Agreement, this law firm is listed as Latham, Wagner, Steel & Lehman. The firm name has since been changed to Latham Steele Lehman, thus this document uses that name.

proposed Class Counsel intends to request that this Court award a case contribution award to Mr. Snider of up to $20,000, subject to Court approval.

### VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court preliminarily certified the Settlement Class. Dkt. No. 41. There have been no subsequent events indicating the Settlement Class should not be finally certified. Therefore, for all of the reasons set forth in Plaintiff's Memorandum In Support of Unopposed Motion for Preliminary Approval of Class Settlement and Certification of a Class for Settlement Purposes, Dkt. 40 at 8–18, and this Court's Order Granting Preliminary Approval of Class Action Settlement, Certifying Class for Settlement Purposes, Approving Form and Manner of Notice, and Setting Date for Fairness Hearing, Dkt. 41 at 2–4, the Court should finally certify the Class for settlement purposes. Specifically, the Class of over 4,000 plan participants meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Dkt. 41 at 2–3. In addition, the class should be certified under Rule 23(b)(1) because claims under ERISA brought by one or more participants or beneficiaries on behalf of a Plan and seeking Plan-wide relief are "a paradigmatic example of a (b)(1) class." *Ramos v. Banner Health*, 325 F.R.D. 382, 395 (D. Col. 2018) (quoting *Troudt v. Oracle*, 325 F.R.D 373 at 376 (D. Col. 2018)); Dkt. 41 at 3.

### VII.    THE COURT SHOULD ENTER AN ORDER OF FINAL APPROVAL OF THE SETTLEMENT AND JUDGMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued

litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise and settlement of disputes." citing *Tulsa City Lines v. Mains*, 107 F.2d 377 (10th Cir. 1939))); *see also Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) (noting "the unassailable premise that settlements are to be encouraged"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010) (recognizing that there is a "strong presumption in favor of voluntary settlement agreements" and that the "presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation" (internal quotation marks omitted)).

### A.    Standard And Process for Approval

The approval of a class action settlement is left within the "sound discretion of the trial court." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). The Court entered a preliminary approval order, Dkt. 41, indicating it was "likely be able to" approve the settlement. Fed. R. Civ. P. 23(e)(1). In other words, the Court preliminarily found the Settlement to be "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(1)(B)(i) and 23(e)(2).

As with preliminary approval, the Court must determine if the Settlement is fair, reasonable, and adequate based on the following factors:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Rule 23(e)'s amendment was designed to "focus[]" the parties "on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the [settlement]." Committee Notes on 2018 Amendment.

The Court considered all these factors when preliminarily approving the Settlement. Nothing has changed to affect that preliminary conclusion.

## B.    The Settlement Should Be Approved

Consideration of all relevant factors demonstrates that the Settlement should be finally approved under Rule 23(e)(2).

### 1.    The Class Representative and Class Counsel Adequately Represented the Class.

The adequacy determination under Rule 23(e)(2)(A) looks to whether the interests of the class representatives do not conflict with the interests of any of the Class Members and that Plaintiffs' counsel are qualified and experienced and provided vigorous representation in this case, as detailed in the motion for preliminary approval. Dkt. 40 at 20–22; *In re Samsung Top-Load Washing Machine Marketing, Sales Practice and Products Liability Litig.,* No. 17–2792, 2020 WL 2616711 at *12 (W.D. Okla. May 22,

11

2020). Where, as here, the injuries suffered by the named Plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *See id.*

Mr. Snider has been an exemplary representative. He has spent significant time on behalf of the class in this litigation, gathering his relevant documents and providing them to counsel, responding to counsel's requests, reviewing documents, and sitting for a deposition. *See* Boyko Decl. in Support of Fee Petition, ("Boyko Decl.") ¶ 35. His claims are the same as the claims of all Class Members, and the relief that he is seeking is calculated using exactly the same formula used for all Class Members.

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. Bailey & Glasser ("B&G") and Izard Kindall & Raabe ("IKR") are active class action practitioners whose long experience in ERISA and class action litigation is demonstrated by the declarations of Mr. Boyko and Mr. Izard, attached to Plaintiff's Memorandum in Support of Unopposed Motion for Attorneys' Fees, Costs and Service Awards. They are experienced in successfully litigating ERISA class actions and have prosecuted cases across the country involving defined contribution retirement plans and investments. As this Court determined in certifying the class, the "adequacy of representation" factor of Rule 23(e)(2)(A) is met.

### 2.     The Proposed Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) instructs the Court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations

between experienced, capable counsel after meaningful discovery. *See United States v. Hardage*, 750 F. Supp. 1460, 1491 (W.D. Okla. 1990) ("Settlements achieved through extensive arms-length negotiations, and approved by all counsel . . . enjoy a strong presumption of validity.").

Courts look at whether the parties "have engaged 'in sufficient investigation of the facts to enable the court to intelligibly make an appraisal' of the fairness of a proposed class settlement." *Deem v. Ames True Temper, Inc.,* No. 10-01339, 2013 WL 2285972, at *2 (S.D. W.Va. May 23, 2013) (citation omitted). Courts consider the extent of discovery conducted to ensure that a plaintiff had access to sufficient material to evaluate the case on an informed basis and to assess the adequacy of the settlement in light of its strengths and weaknesses. *See In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991). Moreover, "[t]he presence of the mediator weighs heavily in favor of this requirement being met." *In re Samsung*, 2020 WL 2616711, at *13; *Montgomery v. Continental Intermodal Group-Trucking LLC*, No. 19–940, 2021 WL 1339305, at *5 (D.N.M. Apr. 9, 2021) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

Here, the case was thoroughly litigated between the two pending cases against Defendants before the Parties engaged in settlement discussions. With the *Snider* case in class certification discovery and the *Myers* case in merits discovery, the Parties completed extensive fact and expert discovery. Defendants produced over 89,000 pages of documents, including transactional records showing the Plan participants' sales/purchases of the CHK fund, and the fiduciary committees' meeting minutes and meeting agendas. Boyko Decl.,

¶ 8. Plaintiffs produced reports from two experts, Samuel Halpern and Steven Pomerantz. Halpern opined that a reasonable fiduciary should have completed liquidating CHK stock by December 2014. *Id.* Dr. Pomerantz made damages calculations based on sales that would have occurred based on a sale during that period. *Id.* In response, Defendants offered the expert testimonies of Lucy P. Allen and Charles E. Wert. Allen performed an empirical analysis to conclude that similarly situated retirement plans would reach the same decision as Defendants and not divest legacy stock. Wert opined on the diversity of investment options in the Plan. Plaintiff's counsel deposed Defendants' expert Allen, while Defendants deposed Plaintiff's experts, Halpern and Pomerantz. *Id.* at ¶ 9. See also, Izard Decl. ¶ 4.

As a result of their thorough initial investigation, their review of Defendants' documents, their work with their own experts and deposition of Defendants' expert, their briefing of various motions and their review of this Court's rulings, Class Counsel had ample information to understand the strengths and weaknesses of the case, which involved a battle of the experts, prior to engaging in settlement discussions.

The settlement process itself was mediated by Robert Meyer, who was intimately familiar with the claims, the defenses, and the work of the Parties' respective witnesses. Plaintiff sent Defendants a detailed settlement proposal and demand letter in October 2021, and the Parties engaged in further settlement correspondence before the mediation on February 15, 2022. Boyko Decl. ¶¶ 12–13. At the mediation, the Parties reached an agreement in principle on the key terms of the Settlement. *Id.* In the weeks that followed, they negotiated the details and finalized the Settlement Agreement. *Id.*

The extent of this litigation, the hard-fought negotiations between experienced

attorneys for both sides, the use of a neutral mediator, and the excellent result for the Settlement Class are all testaments to the non-collusive nature of the settlement. *See, e.g., Mongtomery*, 2021 WL 1339305, at \*5 (citing the completion of discovery and the use of a neutral mediator as sufficient evidence to support a finding that the settlement was negotiated at arm's length).

### 3. The Relief Provided for The Class Is More Than Adequate.

To approve a settlement, a court must determine that the "settlement is fair, reasonable, and adequate." *Jones*, 741 F.2d at 324; *see also In re Samsung*, 2020 WL 2616711, at \*14 ("[T]he relief provided for the Settlement Class must be adequate, and the Settlement must treat Class Members equitably."). As discussed below, the proposed Settlement provides meaningful, immediate and continuing benefits to the Settlement Class, while avoiding potentially years more of costs and delays, and the risks inherent in all class action litigation if the case were to go to trial.

### a. The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the court to consider the adequacy of class relief in light of the costs, risks, and delay of trial and appeal. The Court must consider "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d 1180, 1188 (10th Cir. 2002).

While delay is a risk in all litigation, it is a particularly serious risk in a case that involves retirees in their 60s and 70s. ERISA class actions over novel theories of liability

like this one tend to have significant life-cycles even after trial. For example, in *Tussey v. ABB, Inc*., the first ERISA fiduciary breach class action trial was conducted in January 2010. *See, Tussey v. ABB, Inc*., 746 F.3d 327 (8th Cir. 2014). The participants received a trial verdict in 2012, saw that verdict reduced by the court of appeals in 2014 and eventually settled in 2019 — a decade after trial. *Tussey v. ABB, Inc*., 850 F.3d 951 (8th Cir. 2017) (remanding on damages); *Tussey v. ABB, Inc*., No. 06-4305, Dkt. 869 (W.D. Mo. Aug. 16, 2019) (granting final approval of settlement). Such delays significantly harm class members already in retirement. In contrast, if this Settlement is approved, the Class will receive their payment now, instead of years later if the case were ultimately successful after trial.

The litigation risks in the case are also high. Plaintiff and Defendants have vastly different views about Defendants' potential liability and the likely outcome of the litigation. The key question—whether the Defendants, as prudent fiduciaries, should have divested CHK stock by the end of 2014—is one that will likely be determined through expert testimony. Plaintiff and Defendants each retained experts that provided radically different opinions on this issue.

A Settlement that provides 26.5% of the damages that Plaintiff's expert calculated in his litigation report is an outstanding result in light of the likelihood of further lengthy, expensive litigation and the risk that the Class would recover less—or possibly nothing at all. ERISA class settlements involving statutory claims that have been litigated much more frequently (and, thus, have more of a track-record) often settle for lower percentages of plaintiffs' asserted damages. *See, e.g.*, *Prince v. Eaton Vance Corp*., No. 18–12098, Dkt.

57 (D. Mass Sept. 24, 2019) (approving settlement for 23% of total damages); *Richards-Donald v. Teachers Insurance & Annuity Ass'n of Amer.*, No. 15–8040 (S.D.N.Y.) ($5 million settlement representing 11.6% of alleged damages); *Figas v. Wells Fargo*, No. 08–4546 (D. Minn.) ($17.5 million settlement representing 19.5% of alleged damages); *Sims v. BB&T Corp.*, No. 15–732, 2019 WL 1993519, *2 (M.D.N.C. May 6, 2019) ($24 million settlement representing 19% of alleged damages); *Urakhchin v. Allianz Asset Mgmt. of Amer., L.P.*, No. 15–1614, 2018 WL 8334858, *4 (C.D. Cal. July 30, 2018) ($12 million settlement representing 17.7% of maximum alleged damages).

Ultimately, if approved by the Court, Class Members will receive a significant percentage of the total possible recovery as calculated by Plaintiff's expert without the burden, risks and delay of further litigation. This "adequate relief" factor of Rule 23(e)(2)(C) weighs in favor of preliminary approval.

### b.    The Effectiveness of Distribution to The Settlement Class

The Advisory Committee's Notes to the 2018 amendments to Rule 23(e) indicate that "[m]easuring the proposed relief may require evaluation of any proposed claims process. . . ." Here, the Settlement Administrator has last known addresses and social security numbers for all Class Members, which will be kept confidential under the Court's protective order. Class Members do not need to do anything to receive their shares of the Settlement; the Administrator will simply mail them a check. In addition, if the Class Notice or Distribution Check are returned as undeliverable, the Settlement Administrator will be able to use the social security numbers to trace the Class Member to a new address. Class Members may, if they wish,  request that the distribution be made directly into a tax-

17

qualified retirement account, but all Class Members will receive their portion no matter if they submit such a request or not. In addition, the Plan of Allocation calls for a second distribution to all Class Members of any funds remaining in the Settlement Account after the first distribution. Thus, the Notice, Claim, and Plan of Allocation are imminently reasonable and likely to successfully distribute the settlement funds to the Class.

### c. The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment

Rule 23(e)(2)(C)(iii) directs the Court to consider, as part of its evaluation of the fairness of the Settlement, provisions related to payment of attorneys' fees, including the timing of the payment. The Advisory Committee's Notes on the 2018 Amendment indicates that "[u]ltimately, any award of attorney" fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." The grounds for Plaintiff's motion for attorney's fees and expenses are detailed in Plaintiff's contemporaneously filed motion.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement treats Class Members equitably relative to each other.[6] The dollar amount of the benefit that Class Members will receive from the Settlement will vary based

---

[6] Plaintiff will, in addition, request that the Court approve an additional amount for his services on behalf of the Class. Such a service award does not create a conflict or a situation where Plaintiff is treated more favorably than other members of the Class. Rather, modest service awards to a named plaintiff are simply intended to "compensate named plaintiff for the work they performed—their time and effort invested in the case." *Chiefton Royalty Co. v. Enervest Energy Institutional Fund*, 888 F.3d 455, 468 (10th Cir. 2017). "These services

on how much CHK stock each Class Member had in the Plan and how quickly they divested their CHK stock holdings. Thus, Class Members who suffered the largest damages (those with large amounts of CHK stock and those who did not sell before progressive drops in CHK stock's value) will receive the most, while those who avoided most of the harm by quickly divesting their CHK stock will receive less.

### a.    Notice to Class Members Was Adequate

Class Members are entitled to notice of any proposed settlement and an opportunity to object before it is finally approved by the Court. *See* Manual for Complex Litig. (Fourth), § 21.31. The Court should "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005) (quoting Fed. R. Civ. P. 23(e)(1)(B)). Typically, this means "individual notice in the manner required by Rule 23(c)(2)(B)." *Id*.

Here notice was adequate. The Court-approved Notice, Doc. 41-1, is clear and straightforward, providing Class Members with enough information to evaluate whether to object to the Settlement, as well as directions to the Settlement Website that includes further information and the opportunity to request a direct rollover into a tax qualified account if they so choose, although no claim form submission is required to participate in the settlement distribution. Notices were mailed to the addresses on record with the Plan's recordkeeper, and the Settlement Administrator used social security numbers to trace new

---

typically include monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Id.* (quotations omitted).

addresses when notices were returned as undeliverable. This proposed method of providing notice is adequate under Rule 23(c)(2). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (holding that individual mailed notice which clearly describes the case and Class Members' rights meets due process requirements).

As discussed above, the notice plan has been followed, with mailed notices going to all 4,563 Class Members, as well as the provision of a website with case documents, more information, forms to change address or request a roll-over, and a spanish-language version of the Notice. Thomas Decl. ¶¶ 3–5. Class Members have also had access to, and taken advantage of, a 24/7 toll free number. *Id*. at ¶ 6.

## VIII.    OBJECTIONS

As described above, the notice process included mailing notices directly to over 4,500 class members. To date, no objections have been received or filed. Boyko Decl. 33. The deadline for objections is July 28.

## IX.    CONCLUSION

The proposed class action Settlement Agreement is fair, reasonable, and adequate. For the foregoing reasons, Plaintiff requests that this Court certify the Settlement Class and name Gregory Porter and Mark Boyko of Bailey & Glasser LLP and Robert Izard and Douglas Needham of Izard, Kindall & Raabe LLP as Lead Class Counsel and pursuant to Fed. R. Civ. P. 23(g) and Robert Latham of Latham Steele Lehman as Local Class Counsel, and that the Court grant final approval of the Settlement substantially in the form of the [Proposed] Order and Final Judgment, previously submitted as Exhibit 2 to the Parties' Settlement Agreement.

20

Dated: July 3, 2022                    Respectfully submitted,


                                       /s/ *Mark G. Boyko*
                                       Mark G. Boyko (admitted *pro hac vice*)
                                       BAILEY & GLASSER LLP
                                       34 N. Gore Ave. – Suite 102
                                       Webster Groves, MO 63119
                                       Telephone: (314) 863-5446
                                       Facsimile: (314)-863-5483

                                       Gregory Y. Porter (admitted *pro hac vice*)
                                       Ryan T. Jenny (admitted *pro hac vice*)
                                       **BAILEY & GLASSER LLP**
                                       1055 Thomas Jefferson Street, NW, Suite 540
                                       Washington, DC 20007
                                       Tel: (202) 463-2101
                                       Fax: (202) 463-2103
                                       E-mail: gporter@baileyglasser.com
                                       E-mail: rjenny@baileyglasser.com

                                       **IZARD KINDALL & RAABE LLP**
                                       Robert A. Izard (admitted *pro hac vice*)
                                       Douglas P. Needham (admitted *pro hac vice*)
                                       29 South Main Street, Suite 305
                                       West Hartford, CT 06107
                                       Tel: (860) 493-6292
                                       Fax: (860) 493-6290
                                       E-mail: rizard@ikrlaw.com
                                       E-mail: dneedham@ikrlaw.com

21

**LATHAM, STEELE, LEHMAN, KEELE, RATCLIFF, FREIJE & CARTER, P.C**
Bob L. Latham, OBA No. 15799
James Colvin, OBA No. 20654
1515 E. 71st Street, Suite 200
Tulsa, OK 74136
Telephone: (918) 970-2000
Facsimile: (918) 970-2002
E-mail:  blatham@law-lsl.com
E-mail: jcolvin@law-lsl.com

*Attorneys for Plaintiff*

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2022, I electronically transmitted the foregoing document to the Clerk of Court using ECF System for filing and transmittal of a Notice of Electronic Filing to the counsel of record for the Defendants.

/s/ *Mark G. Boyko*
Mark G. Boyko

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on July 3, 2022, I conferred with counsel for the Defendants. Defendants are not opposed to the relief requested in this motion. Defendants take no position on Plaintiff's specific arguments and representations.

/s/ *Mark G. Boyko*
Mark G. Boyko